OPINION
{¶ 1} Appellant, Danko Fine Landscaping ("Danko"), appeals the decision of the Mahoning County Court Number Five on March 3, 2004, following trial.
 {¶ 2} Appellee, Mike Scolieri, filed a complaint in the instant matter seeking damages for Danko's alleged breach of the parties' contract. Danko is a sole proprietorship owned and operated by David Danko. Danko was to landscape Scolieri's newly constructed residence in Canfield, Ohio.
 {¶ 3} Danko filed an answer and counterclaim asserting that Scolieri breached the contract. Danko alleged that Scolieri prevented it from completing the landscaping. Danko also sought money allegedly owed for work performed at the Scolieri residence.
 {¶ 4} The parties' respective claims were presented during a bench trial on February 27, 2004. The trial judge found in Scolieri's favor and held that Danko refused to return to the job to complete the work required and refused to replace plantings pursuant to the contract. The court concluded, "[t]he testimony clearly establishes that there was significant work yet to be performed on the [planting] bed by the defendant [Danko]", and as such, Danko's actions constituted a breach of contract. (March 3, 2004, Judgment/Journal Entry.)
 {¶ 5} The trial court awarded Scolieri $8,100.26, plus interest and court costs. The court denied Danko's counterclaim.
 {¶ 6} Danko timely asserts two assignments of error on appeal. In its first assignment, Appellant alleges:
 {¶ 7} "The Trial Court erred by finding that Appellant Danko breached the Contract and awarded damages in the amount of $8,100.00 to Appellee Scolieri when the record shows by the manifest weight of the evidence that Appellee Scolieri breached the contract."
 {¶ 8} When an appeal is based on the argument that the trial court's judgment is against the manifest weight of the evidence, an appellate court must employ, "an extremely deferential standard of review." State ex rel. Pizza v. Strope (1990),54 Ohio St.3d 41, 46, 560 N.E.2d 765, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273. As such, even some evidence is sufficient to prevent a reversal. Barkleyv. Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989. An appellate court should, "be guided by a presumption that the findings of the trier-of-fact were indeed correct," since the trier of fact is in the best position to weigh the credibility of the witnesses. Seasons Coal Co, supra, at 80.
 {¶ 9} "It is well-settled that `[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" Sharp v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307, 313, 649 N.E.2d 1219, quoting C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
 {¶ 10} Appellant's first assignment of error claims that the manifest weight of the evidence showed that Scolieri was in breach of the contract, thus Danko was entitled to rescind. Danko cites two main reasons why it believes Scolieri breached the contract. First, Scolieri did not remit the initial payment within the five days provided by the contract. Second, Scolieri allegedly violated the warranty by improperly watering the plants, causing them to die.
 {¶ 11} In order to succeed on a breach of contract claim, a plaintiff must establish, "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Doner v. Snapp (1994),98 Ohio App.3d 597, 600, 649 N.E.2d 42.
 {¶ 12} The existence and the content of the parties' contract in the instant matter are undisputed. However, both parties dispute one another's performance under the contract. Both parties claim that the other was in breach.
 {¶ 13} The trial court correctly noted in its judgment entry that the main issue before the court was whether Danko substantially completed the main planting bed. This issue was determinative of the parties' rights and responsibilities under the contract and is crucial to Appellant's arguments on appeal.
 {¶ 14} Under the contract section entitled, General Conditions to the Installation Contract, the contract reads: "Danko Fine Landscape shall be responsible for watering untilSubstantial Completion of the Work." (Plaintiff's Exh. 1, p. 4.)
 {¶ 15} Thereafter, under the Owner's Responsibility section, the contract provided, in part: "Watering shall be the soleobligation of the Owner after Substantial Completion of theWork." (Plaintiff's Exh. 1, p. 4.)
 {¶ 16} Under the Completion and Acceptance section, the contract defines Substantial Completion of the Work:
 {¶ 17} "(a) Substantial Completion of the Work or of adesignated portion of the Work shall mean that the Work has beensubstantially completed in accordance with the ContractDocuments, subject to completion or correction of items minor innature and that the work has reached that state of completionnecessary for Owner to occupy or utilize the Work for the use forwhich it was intended." (Plaintiff's Exh. 1, p. 6.)
 {¶ 18} "Whether a party has substantially performed under the terms of a contract is a question of fact." Steen Electric v.Homes of Elegance, Inc., 9th Dist. No. 21876, 2004-Ohio-6275, ¶9, citing Marinich v. Bush (Dec. 30, 1999), 12th Dist. Nos. CA99-01-011 and CA99-01-018. Had Danko substantially completed the main planting bed, it would have been entitled to partial payment from Scolieri under the contract. Further, if the main planting bed was substantially completed, then the maintenance responsibilities, including watering, shifted to Scolieri. (March 3, 2004, Judgment/Journal Entry.)
 {¶ 19} The parties' contract called for Danko to install specified plantings at the Scolieri's residence. The main planting bed, which was to be substantially completed prior to the first payment becoming due, is approximately 90 feet long. Its depth varies from approximately 15 to 40 feet. (February 27, 2004, Tr. p. 45.) The contract also provided for Appellant to warrant the planting material for a 12-month period. (Plaintiff's Exh. 1, p. 6.)
 {¶ 20} On July 10, 2002, Scolieri received a statement from Appellant for $8,000. This statement was sent by Danko on its belief that it had made substantial completion of the planting bed. Scolieri felt that the money was not due at that time since there were dead plantings in his beds, not all of the agreed upon plantings were planted, and one tree had been planted that did not comport with the specifications.
 {¶ 21} Scolieri testified that he tried to discuss the incomplete nature of the main planting bed with David Danko at the time he received the $8,000 statement. He told Mr. Danko that he was not going to pay him until the bed was complete and the dead plants were replaced. Danko had planted a tree that was not in the specifications, and Mr. Danko promised Mrs. Scolieri that he would bring her pictures of a potential replacement specimen. (February 27, 2004, Tr. pp. 17-18.) According to Scolieri, Mr. Danko advised Mrs. Scolieri that upon payment, he would complete the job. (February 27, 2004, Tr. p. 19.) Thus, despite their dispute Mrs. Scolieri paid Appellant the $8,000 so it would complete the contracted work. Scolieri subsequently received a letter from Appellant indicating that it was not warranting the dead plants and requesting additional payment for weed maintenance. (February 27, 2004, Tr. pp. 17-18, 20-21.)
 {¶ 22} Appellant argued to the contrary. Mr. Danko testified that with the exception of two shrubs that he refused to plant due to the time of year, he completed the main bed and the foundation planting according to the contract terms prior to issuing the $8,000 statement. Mr. Danko did agree that an ornamental tree was to be replaced to meet the specifications. (February 27, 2004, Tr. pp. 64-65, 69.)
 {¶ 23} According to Mr. Danko, however, the plantings were dead because Scolieri incorrectly watered them. Mr. Danko said that he gave Scolieri written watering instructions after the shrubs were planted. Mr. Danko said he also physically showed Scolieri where the plants' drip line was located and told Scolieri to water at the drip line. (February 27, 2004, Tr. p. 70.)
 {¶ 24} Mr. Danko noticed that Scolieri was employing an overhead sprinkler. He advised Scolieri not to use this since it can cause fungus and potentially stress the plants leading to insect damage. Danko introduced a photograph taken on August 27, 2002, allegedly after several requests for Scolieri to cease using the sprinkler, depicting the overhead sprinkler in the planting bed. (February 27, 2004, Tr. pp. 71-73, Defendant's Exh. G.)
 {¶ 25} Scolieri testified that he never received any written watering instructions from Appellant. He further stated that Mr. Danko never demonstrated how to water the plants, and there was never a notice posted on his garage door relative to watering the plants. (February 27, 2004, Tr. pp. 36-37.) Scolieri did recall a telephone conversation during which Mr. Danko advised him not to employ overhead sprinklers. Thereafter, Scolieri watered the plants only as instructed. Scolieri further testified that he had to water the landscaping because Appellant never watered per their agreement. (February 27, 2004, Tr. pp. 40-41, 46-47.)
 {¶ 26} Thomas Fricker, Sr., owner of Landscape Unlimited, Incorporated, testified on Scolieri's behalf at trial. Fricker testified that when he was at the Scolieri house in October of 2002, he noticed that about 30% of the plantings were dead. This was in spite of the fact that Scolieri had already personally replaced some of the dead items. Fricker testified that the dead plantings he observed were not a result of Scolieri's watering techniques. Fricker indicated that the Norway spruce and the spiraea were planted too deep. He also noted that it appeared that the plantings may have been planted without the necessary subsoil. (February 27, 2004, Tr. pp. 48-57.)
 {¶ 27} Mr. Danko stated that he was present while each plant was planted, and that they were not planted too deeply. He testified that the plants' decline was wholly caused by Scolieri's improper watering. (February 27, 2004, Tr. p. 73.)
 {¶ 28} While the evidence was disputed, the record reflects that there was evidence to support Scolieri's claims that Appellant never substantially completed the main planting bed entitling Appellant to payment. The evidence supports Scolieri's contention that certain plantings were missing, others were dying, and one tree was not planted according to the specifications. There is also evidence to support finding that Mrs. Scolieri paid Appellant $8,000 upon being advised that the contract would be completed. However, this never occurred. The record reflects that Danko thereafter refused to uphold the warranty on the plants. Thus, there was ample support for the trial court's conclusion that Appellant did not perform as required under the contract.
 {¶ 29} The trial court's finding that Appellant and not Scolieri was in breach of the contract is affirmed. Appellant's failure to substantially complete the main planting bed, his demand for payment, and subsequent refusal to uphold the warranty and finish the contracted work was sufficient evidence to support a breach.
 {¶ 30} Further, without substantial completion of the main planting bed, according to the contract, the plant watering responsibilities should have never shifted to Scolieri. As such, this argument lacks merit.
 {¶ 31} Appellant also alleged that Scolieri was in breach for his failure to timely make the requisite payment. The contract indicated that Scolieri would pay $8,000 upon completion of foundation planting within five days of the invoice date. (Plaintiff's Exh. 1, p. 2.)
 {¶ 32} It is undisputed that the payment was not received within five days of the invoice. However, the trial court's finding that the work on the planting bed was not substantially completed at the time of invoice invalidates this argument. The Scolieri's cannot be late with a payment that was not yet due. Thus, this argument lacks merit.
 {¶ 33} Based on the foregoing, the evidence presented at trial supports the trial court's decision. While there was testimony to support both positions, there was competent and credible evidence supporting the failure to complete the planting bed and Appellant's refusal to uphold the warranty on the plants. Thus, Danko's first assignment of error lacks merit and is overruled.
 {¶ 34} Appellant's second assignment of error claims:
 {¶ 35} "The Trial Court erred by finding that (1) Appellant-Danko did not substantially complete the Contract, and (2) that Appellant-Danko was not entitled to judgment in the amount of Five Thousand Six Hundred Seventy Dollars and 82/100 ($5,670.82) for work already completed."
 {¶ 36} The first part of Appellant's second assignment concerns the issues already addressed herein. The trial court clearly found, and the evidence supports, that Appellant did not substantially perform its obligations under the contract, and Appellant breached the contract. As such, these issues will not be readdressed.
 {¶ 37} The second aspect of this assignment of error concerns the award of damages.
 {¶ 38} In looking at this issue, a reviewing court will not disturb a trial court's decision relative to an assessment of damages absent an abuse of discretion. Roberts v. United StatesFid. Guar. Co. (1996), 75 Ohio St.3d 630, 634, 665 N.E.2d 664. Discretion involves an exercise of will and a determination concerning competing considerations. Nakoff v. Fairview Gen.Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1. An abuse of discretion occurs when a court acts unreasonably or arbitrarily in rendering its judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 39} Appellant claims that the total money expended by Scolieri to complete or repair the work, in addition to the $8,000 already paid, equals the original contract price. Thus, Appellant argues that Scolieri was not entitled to damages since he did not pay in excess of the original contract amount for the completion of the contracted work. This assertion is incorrect.
 {¶ 40} Had Appellant performed the contract as required, Scolieri would have paid $15,000 for a properly and completely installed lawn, planting beds, and plants. Instead, Scolieri paid Appellant $8,000 for the incomplete planting bed, still unfinished at the time of trial. Appellant never installed the lawn. Scolieri paid another $8,100.26 to have some of the contracted work completed. Some of the work Scolieri undertook himself.
 {¶ 41} Mere partial performance does not entitle a breaching party to collect pursuant to a contract, "unless the performance it rendered substantially satisfied its contract obligations."Cad Cam, Inc. v. Adept Mfg. Corp. (1999), 2nd Dist No. 97-8031, 1, citing Miller v. Bealer (1992), 80 Ohio App.3d 180,608 N.E.2d 1133; see also Celinski v. Benke (Nov. 29, 1996), 11th Dist. No. 96-A-0020, 2. "A party fails to substantially perform when its omissions are material to the essential duties it promised to performed." Cad Cam, Inc. at 1.
 {¶ 42} The trial court in the instant cause held that Appellant failed to substantially complete its contract obligations. (March 3, 2004, Judgment/Journal Entry.) This included its failure to substantially complete the planting beds initially and its refusal to uphold the warranty on the planting material. Thus, Danko was not entitled to the $8,000 partial payment pursuant to the contract terms.
 {¶ 43} However, it is equally clear from the record that Danko performed some work which benefited Scolieri. It is undisputed that Danko did plant some plants and that only a portion died. We cannot tell from the record before us the exact value of the services Danko rendered.
 {¶ 44} The record is also incomplete as to Scolieri's damages. Mr. Scolieri sought an award which included not only amounts he actually expended, but a speculative amount, as well. The court explained the damage award as comprised of $6,550.80 paid to Fricker to topsoil, grade, and seed his yard; $149.46 paid to Fricker for replacing a tree; and $1,400 that Scolieri spent to replace several plants himself. These are amounts directly attributable to Appellant's breach. Scolieri also testified that he still had several trees that needed replaced at the time of trial, and he intended to have Fricker replace approximately 30% more of the plants originally installed by Appellant that died. No evidence was introduced as to the cost of this material and labor. Finally, while Scolieri personally planted $1,400 in plants, the labor costs for Scolieri's work also should have been covered under Danko's contract. Again, however, no evidence was introduced as to the value of this labor.
 {¶ 45} In a contract dispute, a nonbreaching party has several avenues available in order to correct the wrong. As regards to a monetary award, however, the party damaged by breach has essentially two choices; sue for damages in sufficient amount to make whole the loss he has suffered, or sue to rescind the contract. Wilson v. Kreusch (1996), 111 Ohio App.3d 47, 56,675 N.E.2d 571. A party must elect which remedy to pursue, according to Wilson. In the instant matter, Mr. Scolieri sued for damages.
 {¶ 46} Although the general measure of damages in a contract case is that amount that places the nonbreaching party, "in as good a position as he would have been had the contract been fully performed[,]" Scolieri never established the total amount he would have to expend in order to have the original contracted work completed. F. Enterprises v. Kentucky Fried Chicken Corp.
(1976), 47 Ohio St.2d 154, 159, 351 N.E.2d 121. While the record contains testimony as to a portion of these costs, there is nothing on record to substantiate the total cost. The trial court attempted to calculate damages based on the amount of money expended by Scolieri to complete the contracted work. However, as the court's award cannot contain an amount that is speculative in nature, not all of the damages in the record were included in the damage award. Thus, had Scolieri introduced evidence as to the total costs associated with fully completing the work as contracted, presumably the damage amount would have been greater.
 {¶ 47} In finding that Appellant never made substantial completion of the contract in regard to the main planting bed, the trial court in essence found that Appellant was not entitled to the $8,000 he received in payment. This amount was paid by the Scolieris solely as an enticement for Danko to finish the job. Had Scolieri requested that the contract be rescinded, he would have been entitled to a return of this amount, minus any actual value Danko could prove he provided.
 {¶ 48} Conversely, since the trial court is looking at the "make-whole" amount of damages, this amount cannot be accurately gleaned based on the record before us. The trial court awarded the entire amount of damages Scolieri could substantiate with evidence. Thus, he awarded the amount requested for topsoil, grading, and seeding the yard; replacing a specific tree; and for some, but not all, replacement of planting materials. This amount totaled $8,100.26. The record does not appear to support this award, however. Essentially, this award not only makes Scolieri whole for the breach, it provided him with free landscaping.
 {¶ 49} The total contract price agreed between the parties was $15,000. The Scolieris paid $8,000 to Appellant. After the breach, they and another landscaper partially completed the work at a cost of $8,100.26. The Scolieris were out of pocket $16,100.26. Under a traditional damage calculation, the Scolieris would be entitled to any amount they spent over and above the contract price. In this case, that amount is $1,100.26. However, the trial court found, and it is supported from the record, that Danko was not entitled to the $8,000 payment, as already discussed. He is entitled to the value of the work correctly performed. It is also clear that Scolieri, while not providing evidence as to the cost, will have to provide more labor and material to complete the contract than included in his testimony at trial. Thus, we cannot simply use the traditional damage calculation in this matter.
 {¶ 50} Because both Appellant Danko and Appellee Scolieri failed to provide the trial court with enough evidence to accurately calculate the damage amount, and because it is clear from the record that the amount awarded by the court cannot be reconciled by any traditional method, we must sustain Danko's second assignment of error and remand the matter back to the trial court for a new hearing on damages. At hearing, Appellee must be given an opportunity to more fully explain his damages and provide sufficient evidence to substantiate these. Appellant must be given an opportunity to provide mitigating evidence.
 {¶ 51} The foregoing discussion assumes that the trial court was attempting to provide Scolieri with a traditional damage award. The award is less than clear on this issue. It is possible that the trial court found, without articulating this finding, that Appellant provided no work or materials of value to Scolieri. If, however, the trial court intended to conclude that Danko conferred no benefit to Scolieri, then the trial court could have ordered a return of the $8,000 partial payment.
 {¶ 52} "Although restitution is often applied in conjunction with the rescission of a contract to restore the parties to their original position, it is not necessarily inconsistent with a finding of damages:
 {¶ 53} `When a court attempts to put an injured party in as good a position as that in which full performance of the contract would have put him, it may find that the extent and pecuniary value of that position can not be determined with any reasonable degree of certainty; but the effort need not for that reason be totally abandoned. The expenditures by the injured party in preparation and part performance of the contract or in reasonable reliance upon it are generally ascertainable even though the value of the performance promised is not. Usually, also, that performance was reasonably expected to reimburse the injured party for his expenditures. Therefore the amount of such expenditures may be recovered as `damages,' measuring at least in part the value of the promised compensatory performance. At the same time the recovery and reimbursement of these expenditures has an obvious aspect of restitution to a previous position."Waters v. Collins Body Shop (1995), 12th Dist. No. CA94-09-012, *3, citing 5 Corbin on Contracts (1964, Supp. 1994) 15, Section 996.
 {¶ 54} In either event, the trial court must articulate which measure of damages it is using, whether it finds Appellant provided benefit to Scolieri and, if so, the value of this benefit. This amount can be used to mitigate any amounts due Scolieri if these can be determined with specificity and supported by the evidence.
 {¶ 55} Based on the foregoing, this Court hereby affirms the trial court's judgment as to breach on Appellant's payment. We sustain Appellant's second assignment of error and reverse and remand for a new hearing on the calculation of damages.
Vukovich, J., concurs.
DeGenaro, J., concurs.