BRADFORD et al., Appellees,

v.

B & P WRECKING COMPANY, INC., et al.;  Young, Appellant.

[Cite as *Bradford v. B & P Wrecking Co., Inc.*, 171 Ohio App.3d 616, 2007-Ohio-1732.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–05–1233.

Decided April 13, 2007.

618

Thomas A. Gibson, for appellees.

William A. Sherman II and Melissa L. Korfhage, for appellant.

HANDWORK, Judge.

{¶ 1} This appeal from a judgment of the Lucas County Court of Common Pleas arises from a foreclosure on a mortgage.

{¶ 2} Between October 1, and November 1, 2001, appellant, Kevin A. Young, entered into approximately 20 or 21 lease purchase agreements to buy rental properties worth an estimated $1 million from appellee, Douglas A. Bradford. During the same period, Young signed a promissory note in which he agreed to pay a $192,020 down payment on the properties in consecutive monthly installments of $3,305 with an interest rate of ten percent per annum. The note was secured by a mortgage on seven pieces of Young's real property, collectively denominated as "3111 Buckeye Street." Appellee Bradford and his spouse, third-party appellee Elana V. Bradford, are named as mortgagees. Appellee recorded the mortgage on October 3, 2001.

{¶ 3} At the request of appellant, the lease purchase agreements were subsequently converted to land installment contracts. Appellant claimed that he needed the $1 million dollars worth of property in order to borrow funds to renovate the 3111 Buckeye properties and sell them at a profit. It is undisputed that Douglas Bradford never recorded the land installment contracts.

{¶ 4} Appellee introduced appellant to the tenants living on the properties subject to the land installment contracts as their new landlord. For the next few months, appellant collected the rents from the tenants. He did not, however, pay any utilities or taxes on the properties as required by the land installment contracts. Between October 2001 and January 2002, appellant made only "a few" payments on the contracts and one payment of $75 on the promissory note. After numerous requests for payments, appellee, who had monetary obligations to his own vendor, Dan Anderson, on some of the land installment contracts entered into by appellant, declared that appellant was in default and demanded the return of the land installment contracts. In January 2002, appellant returned keys to the properties and some of the contracts to appellee. Appellee was sued by Anderson for breach of his obligation on some of the land installment contracts, and settled out of court for $3,500.

{¶ 5} On November 12, 2002, appellee filed a complaint seeking foreclosure on the mortgage. Young filed an answer, counterclaims, and a third-party complaint. Appellant's counterclaims and third-party complaint asked the trial court to (1) declare that he was the titleholder of the properties at 3111 Buckeye Street, (2) find that Douglas and Elana Bradford had slandered the title to that property, and (3) determine that the Bradfords had fraudulently represented that the land installment contracts would be transferred to appellant.

{¶ 6} Subsequently, this cause was consolidated with case No. C–102–4697, which involved separate claims by different parties related to 3111 Buckeye Street. None of those claims are a part of this appeal. After the consolidation, appellant filed a motion for summary judgment. He asserted that pursuant to R.C. 5313.08, appellee's sole remedy was to request a forfeiture of the land contracts and restitution of the properties. Appellant contended that because he returned the land installment contracts to appellee and surrendered the properties, appellee was barred, under R.C. 5313.10, from further action on the contracts. Appellee filed a memorandum in opposition, arguing that he had never instituted a lawsuit under either R.C. 5313.07 or 5313.08; therefore, he was not barred from bringing a foreclosure action.

{¶ 7} The trial court denied appellant's motion for summary judgment. A bench trial was held on the claims of the parties to this appeal. At the close of all evidence, appellant asked the court for a directed verdict on appellee's action in foreclosure. He claimed that the evidence offered at trial established that the promissory note, as a contract, lacked consideration because appellant had returned the land installment contracts to appellee. Appellee requested a directed verdict on appellant's counterclaim of fraud. He argued that appellant had failed to offer any evidence that he had intentionally misrepresented the fact that appellee would record the land contracts. The common pleas court denied

appellant's motion for a directed verdict and granted appellee's motion for a directed verdict.

{¶ 8} On June 9, 2009, the court entered a judgment finding that appellee was entitled to have the mortgage on appellant's properties, known as 3111 Buckeye Street, foreclosed. The judge ordered the sale of the properties and ordered appellant to pay Douglas Bradford $192,020 plus interest accrued through April 12, 2005, of $166,833.84. The court further directed appellant to pay appellee "interest from April 13, 2005, at a rate of 18 percent per annum, per diem rate of $94.695 per day with late fees of $8,400 together with attorneys fees in the amount of $19,536.89, and costs including but not limited to the cost of protecting said premises, for taxes, court costs and the costs of certificate of title to the mortgaged property." Additionally, the trial court found that appellant could not recover on his remaining counterclaims against Douglas and Elana Bradford.

{¶ 9} Appellant appeals the trial court's judgment and contends that the following errors occurred in the proceedings below:

{¶ 10} "1. The trial court erred to the prejudice of appellant, Kevin Young in denying appellant's motion for a directed verdict and finding that appellee, Douglas Bradford, held a valid mortgage on 3111 Buckeye Street and a valid promissory note in the amount of $192,020.00."

{¶ 11} "2. The trial court erred to the prejudice of appellant in its calculation of damages in awarding appellee, Douglas Bradford, the full amount of the promissory note, $192,020.00, plus interest, costs, attorney fees, totaling more than $317,303.84."

{¶ 12} "3. The trial court erred to the prejudice of appellant by denying appellant's motion for summary judgment against appellee, as no genuine issue of material fact was ever presented which appellee could prove that he was entitled to damages after the properties were restored to his possession."

{¶ 13} "4. The trial court erred to the prejudice of appellant in its ruling that appellee[s] did not slander the title of 3111 Buckeye Street."

{¶ 14} "5. The trial court erred to the prejudice of appellant in granting appellee[s'] motion for a directed verdict on appellant's fraud claim."

{¶ 15} We will first address appellant's third assignment of error. In that assignment, appellant asserts that the trial court erred in denying his motion for summary judgment as a matter of law because appellee's remedy for appellant's default on the land installment contracts is limited by R.C. 5313.10 to an action for forfeiture of the land installment contracts and restitution of the properties.

{¶ 16} Appellate courts review the grant of summary judgment de novo, applying the same standard used by the trial court. *Grafton v. Ohio Edison Co.*

(1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court reviews the same evidence that was properly before the trial court. *Am. Energy Servs., Inc. v. Lekan* (1992), 75 Ohio App.3d 205, 208, 598 N.E.2d 1315. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

{¶ 17} R.C. 5313.10 provides:

{¶ 18} "The election of the vendor to terminate the land installment contract by an action under section 5313.07 or 5313.08 [1] of the Revised Code is an exclusive remedy which bars further action on the contract unless the vendee has paid an amount less than the fair rental value plus deterioration or destruction of the property occasioned by the vendee's use. In such case the vendor may recover the difference between the amount paid by the vendee on the contract and the fair rental value of the property plus an amount for the deterioration or destruction of the property occasioned by the vendee's use."

{¶ 19} We must first ascertain the intent of the legislature in enacting R.C. 5313.10. The starting point for determining intent is "the language in the statute and the purpose to be accomplished." *Christe v. GMS Mgt. Co., Inc.* (2000), 88 Ohio St.3d 376, 377, 726 N.E.2d 497. If the language is plain, unambiguous, and conveys a clear and definite meaning, then there is no need to rely on other rules of statutory interpretation. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105–106, 65 O.O.2d 296, 304 N.E.2d 378.

{¶ 20} The clear intent of R.C. 5313.10 is "to prevent the vendor from obtaining a deficiency judgment against the vendee in a foreclosure action under R.C. 5313.07 or an action for forfeiture [and] restitution under R.C. 5313.08." *Farkas v. Bernard* (May 16, 1996), 10th Dist. No. 95APE10–1365, 1996 WL 257455. See, also, *Koehler v. Paniagua*, 3d Dist. No. 5–02–64, 2003-Ohio-1972, 2003 WL 1903737, ¶ 9.

{¶ 21} In the present case, appellee claims that he never sought forfeiture and restitution of the premises pursuant to R.C. 5313.08. We concur with this assertion. R.C. 5313.06 requires a vendor to serve written notice of the vendor's intent to seek forfeiture and restitution of the property under R.C. 5313.08. That notice must contain specific items; e.g., identification of the land installment contract, the terms and conditions in the contract that the vendee failed to comply with, and notice that the contract will be forfeited unless the vendee

---

1. R.C. 5313.08 applies to land installment contracts that have been in effect for less than five years and is therefore the statutory section pertinent to this cause.

performs the terms and conditions within ten days of the completed service of notice. In the case sub judice, it is undisputed that while Douglas Bradford orally declared that appellant was in default and asked for the return of the land installment contracts, he never commenced any formal proceedings pursuant to R.C. 5313.06 and, consequently, never elected to proceed under R.C. 5313.08.

{¶ 22} *Good Shepherd Baptist Church, Inc. v. Columbus* (1984), 20 Ohio App.3d 228, 20 OBR 288, 485 N.E.2d 725, the case cited by appellant as supporting his position that R.C. 5313.08 was the exclusive remedy that could be pursued by appellee, is distinguishable from the case under consideration. In *Good Shepherd Baptist Church,* the vendor (the church) had "repossessed [the] property by forfeiture pursuant to R.C. 5313.08." Id. at 229, 20 OBR 288, 485 N.E.2d 725. Thus, when the vendor filed a second action to foreclose on a note and mortgage given in lieu of a down payment, the 10th District Court of Appeals determined that the second action was barred by R.C. 5313.08. Id.

{¶ 23} We must reiterate that unlike the vendor in *Good Shepherd Baptist Church,* Douglas Bradford never elected to proceed under R.C. 5313.08. Therefore, based on the foregoing, we are compelled to conclude that the trial court did not err in denying appellant's motion for summary judgment on the issue of whether appellee could seek foreclosure on the promissory note and mortgage that he held on 3111 Buckeye Street. Accord, *In re Sam A. Tisci, Inc.* (Bankr.N.D.Ohio 1990), 124 B.R. 42. Appellant's third assignment of error is not well taken.

{¶ 24} Appellant's first assignment of error alleges that the trial court erred in denying his motion for a directed verdict on the question of whether appellee held a valid note and mortgage. The basis of this motion was, and is, appellee's alleged failure to demonstrate that consideration for the promissory note existed. According to appellant, the bargained-for consideration in this real estate transaction was (1) appellee's transfer of legal interest in and title to $1 million worth of property to Young so that he could use the properties to secure a loan for the purpose of improving the transferred properties and 3111 Buckeye Street and/or (2) the recordation of the $1 million worth of land installment contracts so that he could use those properties to obtain the loan.

{¶ 25} A motion for a directed verdict lies only in a jury trial, not in a bench trial. *Parrish v. Machlan* (1997), 131 Ohio App.3d 291, 294, 722 N.E.2d 529; *Fastcorp v. First Energy/Centerior Serv. Co.,* 8th Dist. No. 84999, 2005-Ohio-2455, 2005 WL 1190731, ¶ 7. Because this was a case tried to the bench and not a jury, the applicable standard of review involves a determination of whether the trial court's judgment is against the manifest weight of the evidence. *Whitestone Co. v. Stittsworth,* 10th Dist. No. 06AP–371, 2007-Ohio-233, 2007 WL 155299, ¶ 13; *Fastcorp v. First Energy/Centerior Serv. Co.,* ¶ 10; *Jobe v. Lawshe*

(Dec. 6, 1996), 6th Dist. L–96–157, 1996 WL 715455. When there is some competent, credible evidence supporting a trial court's decision, an appellate court will not overturn that decision based upon a manifest weight argument. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

{¶ 26} Relying on R.C. 5313.02(C), appellant argues that appellee was required to record the land installment contracts within 20 days after they were signed by the vendor and vendee. He then asserts: "If the legal transfer of title was the actual 'basis of the bargain'—that is, the very purpose for which the deal was made—then the lack of recordation constitutes a failure to perform."

{¶ 27} In a case "[w]here the signatures on a note are admitted, the production of the instrument entitles the holder to recover unless a defense is established." *Sur–Gro Plant Food Co. v. Morgan* (1985), 29 Ohio App.3d 124, 129, 29 OBR 139, 504 N.E.2d 445, citing R.C. 1303.36(B). Therefore, in the case sub judice, appellant's claim of a lack of consideration in the form of land installment contracts for the promissory note/mortgage is an affirmative defense, which must be proved by a preponderance of the evidence. Id.

{¶ 28} Appellant confuses a transfer of title to a vendee with a vendor's duty to record land installment contracts. Specifically, pursuant to a land installment contract, vendees immediately gain possession of the premises while legal title is held by the vendor until full payment is made according to the terms of the contract. R.C. 5313.01(A). Consequently, vendees do not obtain legal title to the premises immediately; instead, they have only "a possessory equitable interest relative to the amount of the purchase money that has been paid." *Lee v. Sanders*, 11th Dist. No. 2004–T–0024, 2005-Ohio-2091, 2005 WL 1007254, ¶ 12. Thus, appellant failed to establish, by a preponderance of competent, credible evidence, that appellee was required to provide legal title for the properties subject to the land installment contracts. Indeed, pursuant to R.C. 5313.01(A), appellant had no right to obtain legal title to these properties.

{¶ 29} With regard to recordation of the land installment contracts, R.C. 5313.02(C) states: "Within twenty days after a land installment contract has been signed by both the vendor and the vendee, the vendor shall cause a copy of the contract to be recorded as provided in section 5301.25 of the Revised Code * * *." The word "shall" in a statute is consistently interpreted to make the provision in which it is contained mandatory unless there is a clear and unequivocal intent that it receive a construction other than its ordinary meaning. *Dorrian v. Scioto Conserv. Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus. Thus, the recording of a land installment contract appears to be mandatory.

{¶ 30} Nevertheless, R.C. 5301.25(A), as effective at the time that the parties entered into the land installment contracts, states:

{¶ 31} "All deeds, land contracts * * * and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments * * * shall be recorded in the office of the county recorder of the county in which the premises are situated. *Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.*" (Emphasis added.)

{¶ 32} Based upon the language in R.C. 5301.25(A), the Ohio Supreme Court held that the purpose of R.C. 5301.02(A) is to protect subsequent bona fide purchasers of property. *Basil v. Vincello* (1990), 50 Ohio St.3d 185, 190, 553 N.E.2d 602, citing *University Hills, Inc. v. Patton* (C.A.6, 1970), 427 F.2d 1094, 1100, and *Corwine v. Thompson Natl. Bank of Putnam* (C.A.6, 1900), 105 F. 196. Appellant is not a subsequent bona fide purchaser; he is the vendee under a number of land installment contracts. Thus, appellee's failure to record the contracts does not render them unenforceable as between appellant and appellee. *McGinnis v. Hensley,* 3d Dist. No. 3–04–29, 2005-Ohio-2507, 2005 WL 1205117, ¶ 13. Therefore, the contracts are not void as between the parties and constitute consideration for the promissory note.

{¶ 33} Appellant testified, nonetheless, that he expressly asked appellee to record the land installment contracts because they were to be used as a basis to obtain funds from a lender to renovate both those properties and 3111 Buckeye Street and that appellant failed to do so. At trial, however, appellee gave the following testimony on this issue:

{¶ 34} "Q. Did Mr. Young ever explain to you that he needed these contracts to be recorded?

{¶ 35} "A. No.

{¶ 36} "Q. Did he ever ask you for the land contracts to be recorded?

{¶ 37} "A. No.

{¶ 38} "Q. As you sit here today, if he asked you, is there any reason they should not have been recorded?

{¶ 39} "A. No."

{¶ 40} Consequently, an issue of fact based upon opposing witness testimony as to the request for recordation existed. Generally, an appellate court must presume that the findings of the trier of fact are correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 461 N.E.2d 1273. This presumption arises because the trier of fact is in the best position to make factual

findings based upon an opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed on appeal through the written record. Id. Thus, the trial judge, as the trier of fact in the instant case, could and did place greater credence in the testimony offered by appellee on the issue of recordation. *Buckeye Telesystem, Inc. v. MedCorp., Inc.*, 6th Dist. No. L–05–12, 2006-Ohio-3798, 2006 WL 2053322, ¶ 25.

{¶ 41} We therefore find that appellant failed to establish, by a preponderance of competent, credible evidence, the defense of a lack of consideration for the promissory note/mortgage, and appellant's first assignment of error is not well taken.

{¶ 42} In his second assignment of error, appellant maintains that the trial court erred in awarding appellee the full amount of the promissory note, $192,020, plus additional interest, costs, and attorney fees. Citing R.C. 5313.10, appellant first contends that because appellee elected to repossess all of the properties that were the subject of the land installment contracts, he is barred from seeking monetary compensation from appellant for a breach of the promissory note/mortgage. In resolving appellant's third assignment of error, we decided that appellee made no such election; therefore, this first contention is without merit.

{¶ 43} Appellant next argues that the trial court abused its discretion by awarding appellee excessive damages. Specifically, appellant complains that the trial court erred because it did not allow equity to intervene and, as a consequence, awarded appellee unreasonable damages. He therefore asks this court to enter a remittitur[2] on the damages award.

{¶ 44} A reviewing court will not disturb a trial court's decision relative to a claim of excessive damages absent an abuse of discretion. *Stevers v. McClure*, 6th Dist. No. WD–04–078, 2005-Ohio-5032, 2005 WL 2334706, ¶ 20. See, also, *Scolieri v. Danko Fine Landscaping*, 7th Dist. No. 04 MA 59, 2005-Ohio-2787, 2005 WL 1324758, at ¶ 38, citing *Roberts v. United States Fid. & Guar. Co.* (1996), 75 Ohio St.3d 630, 634, 665 N.E.2d 664. "Abuse of discretion" denotes that a trial court's attitude in reaching its judgment was unreasonable, arbitrary, or unconscionable. *State ex rel. Cranford v. Cleveland*, 103 Ohio St.3d 196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶ 24.

---

2. "[A] court of appeals has the same unlimited power and control of verdicts and judgments as the trial court and may weigh the evidence and exercise an independent judgment upon questions of excessive damages, and when no passion or prejudice is apparent, may modify and affirm the judgment by ordering a remittitur with the consent of the prevailing party." *Fraysure v. A–Best Products Co.*, 8th Dist. No. 83017, 2003-Ohio-6882, 2003 WL 22971024, ¶ 22, citing *Duracote Corp. v. Goodyear Tire & Rubber Co.* (1983), 2 Ohio St.3d 160, 2 OBR 704, 443 N.E.2d 184.

{¶ 45} Appellant relies on *In re Sam A. Tisci, Inc.,* supra, and *Norpac Realty Co. v. Schackne* (1923) 107 Ohio St. 425, 140 N.E. 480, to argue that awarding appellee the $192,020 down payment as damages is inequitable and unjust.

{¶ 46} In *Norpac Realty Co. v. Schackne,* the Ohio Supreme Court considered a case in which a realty company purchased rental property, by means of a land installment contract, from Schackne for a total price of $50,000. Pursuant to the terms of the contract, the buyer provided a $12,500 first installment cash payment and agreed to make payments to the seller totaling $25,000 over the next three years. Id. 107 Ohio St. at 425, 140 N.E. 480. For the remaining balance, the realty company assumed the $25,000 note and mortgage owed by Schackne on the property. Id. at 425–426, 140 N.E. 480. The buyer defaulted on the first payment of the $2,500. Id. at 426, 140 N.E. 480. Pursuant to the sales contract, upon default by the buyer, Schackne not only regained possession of the property but could also retain the $12,500 first installment payment "as stipulated damages" for nonpayment of the sales contract. Id. at 426–427, 140 N.E. 480.

{¶ 47} Schackne brought an action to regain possession of the property and asserted his right to retain the $12,500 cash installment. The central issue in that case was whether stipulated damages in a contract for the sale of lands are a penalty or liquidated damages Id. at 427, 140 N.E. 480. Because (1) the buyer admitted the depreciation in the property's market value and (2) the rent for the property dropped from $500 to $250 per month during the buyer's year of possession, the Ohio Supreme Court found that under the circumstances of that case, the $12,500 constituted liquidated damages. Id. at 428, 140 N.E. 480. The court further opined that even though the cash installment of $12,500 was large when considered in proportion to the purchase price of $50,000, "it was not so disproportionate, so extravagantly unreasonable, or so manifestly unjust as to require equitable interference with the contract agreed to." Id. at 430, 140 N.E. 480.

{¶ 48} The second case cited by appellant as standing for the proposition that equity can interfere in a case where the damages are excessive is *In re Sam A. Tisci, Inc.* (Bankr.N.D.Ohio 1990), 124 B.R. 42. In *Tisci,* the Wageners, the vendees, entered into a land installment contract with Sam A. Tisci, Inc., the vendor, for the purchase of property at a sale price of $152,000. Id. at 42. In lieu of a cash down payment, the parties executed a promissory note in the amount of $12,000, plus interest at ten percent per annum. Id. at 43. After a subsequent amendment, it was agreed that the amount owed on the note was $12,600, plus interest at ten percent per annum. Id.

{¶ 49} The vendees defaulted on the land installment contract and reconveyed the property to the corporation, which later filed for bankruptcy. Id. The trustee in bankruptcy filed a complaint against the vendees to recover on the promissory

note. Id. While noting that pursuant to *Norpac Realty Co.*, there are situations in which equity must determine the result, the bankruptcy judge decided that the vendor was "entitled to keep the down payment as money paid on the contract." Id., 124 B.R. at 45. The court further held that it did not matter that the down payment was in the form of a promissory note. Id. See, also, *Ottenstein v. W. Res. Academy* (1977), 54 Ohio App.2d 1, 8 O.O.3d 22, 374 N.E.2d 427 (down payment of $5,000 on the purchase of ten lots that "represents a comparatively small advance payment, is subject to forfeit when the forfeiting party has inexcusably breached the contract and the receiving party remains prepared to complete the closing").

{¶ 50} As applied to the present case, appellant asserts that he had control over the rental properties only for "approximately two months" before that control was returned to appellee. He argues that thereafter appellant continued to generate income from those properties.

{¶ 51} To the contrary, appellee contends, as testified to at trial, that appellant's breach of the land installment contracts caused him to lose cash down payments on the properties he had to return to Dan Anderson, that there is no evidence that he profited from the properties, and that his actual losses on the properties returned to him by appellant was $165,000. Appellee also maintains that the down payment in the form of a promissory note for $192,020 was not disproportionate to the purchase price, $1 million, of the rental properties that were subject to the land installment contracts; therefore, equity should not intervene. Based upon the record before us, we agree with appellee and, therefore, refuse to allow equity to intervene in this cause, do not find that the trial court abused its discretion in awarding $192,020 as damages, and will not remit the trial court's award of damages.

{¶ 52} Appellant next claims that the trial court erred in failing to find that the parties to this case abandoned the land installment contracts. Abandonment is an affirmative defense. See Civ.R. 8(C). The failure to present an affirmative defense before pleading, affirmatively in a responsive pleading, or within an amended pleading waives the defense. Civ.R. 8(C), 12(B), and 15; *Mills v. Whitehouse Trucking Co.* (1974), 40 Ohio St.2d 55, 69 O.O.2d 350, 320 N.E.2d 668. In this case, appellant neither raised the affirmative defense of abandonment in his answer nor by means of an amended pleading. Therefore, he waived the right to use abandonment of the land installment contracts as a defense. *Buckeye Telesystem, Inc. v. MedCorp., Inc.*, 2006-Ohio-3798, 2006 WL 2053322 at ¶ 31.

{¶ 53} Based upon all of the foregoing reasons, appellant's second assignment of error is not well taken.

{¶ 54} Appellant's fourth assignment of error asserts that the trial court erred in denying his motion for a directed verdict on his counterclaim alleging that appellee, Douglas Bradford, and third-party appellee, Elana Bradford (hereinafter collectively known as "appellees"), slandered the title of the properties at 3111 Buckeye Street. We first note, as do appellees, that the trial court did not grant appellees a directed verdict on appellant's claim for slander of title. The court decided this issue in its final judgment entry after considering all evidence. We will therefore apply a manifest-weight-of-the-evidence standard.

{¶ 55} In bringing a slander-of-title tort action, appellant was required to prove, by a preponderance of the evidence, that (1) appellees, in particular, Douglas Bradford, published a false statement disparaging appellant's title to 3111 Buckeye Street; (2) Douglas Bradford made the false statement with malice or reckless disregard of its falsity; and (3) the false statement caused actual or special damages. *Green v. Lemarr* (2000), 139 Ohio App.3d 414, 430, 744 N.E.2d 212, citing *Buehrer v. Provident Mut. Life Ins. Co. of Philadelphia* (1930), 37 Ohio App. 250, 256, 174 N.E. 597.

{¶ 56} Appellant first argues that appellees slandered the title to 3111 Buckeye Street because even after appellant returned the land installment contracts, Douglas Bradford stated that he saw no reason to remove the mortgage on that property. In short, appellant urges that once the land installment contracts were returned to Douglas Bradford, there was a lack of consideration for the mortgage; therefore, the statement concerning removal of the mortgage was false and made with reckless disregard of its falsity. We disagree. Once the land installment contracts were returned to Douglas Bradford, the central issue in this case became one of whether Bradford could retain appellant's down payment, in the form of a promissory note secured by a mortgage, of $192,020. This issue was decided in Douglas Bradford's favor in appellant's second assignment of error.

{¶ 57} Appellant also maintains that Douglas Bradford "clearly defamed the title to 3111 Buckeye Street by retaining an invalid mortgage" because the testimony at trial revealed that Bradford had "no intention of performing according to the contract." Appellant points to Bradford's testimony in the trial transcript in support of this argument. In this testimony, Bradford testified that after appellant defaulted on the land installment contracts and returned some of them, he transferred them to Dan Anderson with the understanding that Anderson was going to "make a deal with Kevin Young with the mortgages so he would have clear title to give Kevin Young." Bradford also stated that he transferred the contracts so that he would be "out of the loop completely" as to any transactions involving appellant and would no longer owe Anderson any more

payments on the land installment contracts. Additionally, Bradford testified that Anderson retained the down payments he made on the properties and later brought suit against him.

{¶ 58} A plain reading of Douglas Bradford's testimony does not reveal an intention on his part not to perform under the land installment contracts. It merely discloses that after appellant's breach, that is, default, on those contracts, Bradford no longer wished to engage in any real estate transactions with appellant. We therefore find that appellant failed to prove, by some competent credible evidence, that appellees maliciously or with reckless disregard of its falsity made a false statement that slandered the title to 311 Buckeye Street. Appellant's fourth assignment of error is not well taken.

{¶ 59} In his fifth and final assignment of error, appellant complains that the trial court erred in granting appellees' motion for a directed verdict on appellant's counterclaim of fraud. Initially, we find, as we did in appellant's first assignment of error, that a motion for a directed verdict does not lie in a bench trial. *Parrish v. Machlan*, 131 Ohio App.3d at 294, 722 N.E.2d 529. As a result, we will again review this assignment of error pursuant to a manifest-weight standard. *Whitestone Co. v. Stittsworth*, 2007-Ohio-233, 2007 WL 155299, ¶ 13.

{¶ 60} In his counterclaim based on fraud, appellant asked the trial court for damages; he also asked the court to rescind all written and oral agreements between himself and appellees. To prevail in an action to rescind a contract on the basis that it was procured by fraud, the proponent of rescission must establish the applicable elements by clear and convincing evidence. *Schulz v. Sullivan* (1993), 92 Ohio App.3d 205, 208, 634 N.E.2d 680, citing *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118. Thus, appellant was required not only to establish fraud by a preponderance of the evidence as to his request for damages, but also to demonstrate fraud by clear and convincing evidence as to his request for rescission of the promissory note.

{¶ 61} The following elements must be established in order to establish the defense of fraudulent misrepresentation: [3]

{¶ 62} "(a) [A] representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the

---

**3.** The elements of fraudulent-inducement are essentially the same as those for fraudulent misrepresentation. *Gentile v. Ristas*, 160 Ohio App.3d 765, 2005-Ohio-2197, 828 N.E.2d 1021, ¶ 51

reliance." *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709.

{¶ 63} In the present case, appellant insists that he produced sufficient evidence to establish that Douglas Bradford induced him into signing the promissory note through promises of transferring title of $1 million worth of property and repeatedly telling appellant that he would record the land installment contracts.

{¶ 64} With regard to the alleged promises, if any, of transferring title of the land-installment-contract properties, appellant failed to offer any evidence, much less a preponderance of the evidence or clear and convincing evidence, that he justifiably relied on this alleged false representation/inducement. To repeat, under a land installment contract, legal title is held by the vendor until full payment is made according to the terms of the contract. R.C. 5313.01(A). Therefore, vendees cannot not obtain legal title to the premises immediately. *Lee v. Sanders*, 2005-Ohio-2091, 2005 WL 1007254 at ¶ 12. Because appellant is involved in real estate transactions and rental properties, knowledge of the law governing land installment contracts can be imputed to him. See *Frey v. Trenor Motor Co.* (August 25, 1995), 2d Dist. No. 94–CA–69, 1995 WL 502254 (imputing the knowledge of laws governing the sales of used cars to an experienced car dealer). Having this knowledge, appellant could not show, by either a preponderance of the evidence or clear and convincing evidence, that any reliance on the allegedly false statement concerning transfer of title was justified.

{¶ 65} As for the alleged promises made by appellee that he would record the land installment contracts ("would take care of it"), there was conflicting evidence on the issues of whether the request to record the contracts was ever made by appellant or any promise to do so was ever made by appellee. Again, the determination of these issues rested upon the credibility of the witnesses and is a to be decided by the trier of fact, who, in this instance, found Douglas Bradford more credible. We will not second-guess the trial court's decision.

{¶ 66} For the above reasons, appellant's fifth assignment of error is found not well taken.

{¶ 67} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed.

SINGER and SKOW, JJ., concur.