OHIO DIVISION OF REAL ESTATE et al., Appellees,

v.

VANTELL, Appellant.

[Cite as *Ohio Div. of Real Estate v. Vantell* (1998), 128 Ohio App.3d 410.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 96 C.A. 203.

Decided June 18, 1998.

*Betty D. Montgomery*, Attorney General, and *Robert K. Lang*, Assistant Attorney General, for appellees.

*Matthew T. Fekete*, for appellant.

Cox, Judge.

This matter presents a timely appeal from a judgment rendered by the Mahoning County Common Pleas Court adopting the magistrate's decision that

affirmed a decision of the appellee, Ohio Real Estate Commission, suspending appellant Gregory M. Vantell's broker's license for a period of fifteen days.

In 1991, appellant, a licensed real estate broker, and D. Richard Detwiler verbally entered into a "joint venture agreement" to purchase certain real estate being sold by Detwiler's friend. The agreement was not reduced to writing because of the friendship and past business relationship that the parties had previously established. The purpose of the venture was to improve the property and resell it at a profit that both parties would share equally. All profits would be placed in the parties' joint checking account.

Pursuant to the agreement, appellant supplied the $10,000 down payment, gave a mortgage for the balance, and acquired title to the property, whereas Detwiler arranged and supervised all necessary improvements and repairs to the property. Additionally, appellant and Detwiler made equal monetary contributions to the property regarding mortgage payments, taxes, insurance, improvements, and repairs. Appellant testified that he considered Detwiler a co-owner of the property.

Substantial repairs and improvements were made to the property, and it was advertised for sale. Subsequently, Eileen Leffel bought the property for $59,500. The sales agreement required that Leffel make a down payment of $30,000 and pay the balance approximately six months later. Leffel occupied the property for several months, became dissatisfied with its condition, and refused to pay the balance due or to otherwise close the sale. Ultimately, Leffel repudiated the contract. She filed suit in the Mahoning County Common Pleas Court to rescind the sales agreement and also filed a complaint against appellant with the Ohio Division of Real Estate ("ODRE"). The lawsuit was later settled, requiring Leffel to relinquish any claim to the property and to pay a reasonable rental for the time she occupied the property. In exchange, appellant and Detwiler were to refund Leffel's down payment.

After Leffel vacated the property, appellant and Detwiler jointly rented the property and later resold the property for $60,000. Detwiler was a party to the purchase agreement. Appellant and Detwiler shared equally in the final reconciliation of expenses and in the net profits of the sale.

Although Leffel requested that her complaint with ODRE be dropped, the Ohio Real Estate Commission ("OREC") refused and brought an administrative disciplinary action against appellant, alleging that appellant violated R.C. 4735.18(A)(6) and (34) for authorizing Detwiler to act as an agent in the capacity of a real estate broker. On August 9, 1994, an ODRE hearing examiner heard testimony from both ODRE and appellant and issued a report on August 22, 1994, finding that appellant violated R.C. 4735.18(A)(6) by committing misconduct and R.C. 4735.18(A)(34) by having authorized or permitted Detwiler to act in a

representative real estate capacity on behalf of another when Detwiler was not licensed. The ODRE reviewed the matter on October 19, 1994, and on October 24, 1994, adopted the hearing examiner's findings of fact and conclusions of law and ordered the suspension of appellant's real estate broker's license for fifteen days. On November 9, 1994, appellant appealed the administrative order to the Mahoning County Common Pleas Court. The lower court sustained appellant's motion for a stay of the suspension and enforcement orders which the OREC issued, pending determination of the appeal. The lower court referred the matter to a magistrate, who issued a decision on September 11, 1996 affirming the order of the OREC. On October 8, 1996, the lower court adopted the magistrate's decision as its own, noting that no written objections to the decision had been filed pursuant to the form and time requirements of Civ.R. 53(E)(3). Appellant filed a notice of appeal and objections to the decision of the magistrate on October 10, 1996. The within appeal followed.

Appellant sets forth two assignments of error on appeal.

Appellant's first assignment of error on appeal alleges:

"The Ohio Real Estate Commission, the magistrate and the trial court each erred to the prejudice of appellant by incorrectly interpreting and failing to apply the statutory exemption set forth in O.R.C. 4735.01(K). That exemption specifically excludes from the commission's jurisdiction those transactions involving real estate which is either owned by the party or in which the party has 'an interest in', or which is 'acquired on his own account ... as an incident to the management of the property and the investment in it.' [Ellipsis sic.]

"By failing to correctly apply the statute, the commission's administrative action was without jurisdiction and was not in accordance with law. The commission's action was further not supported by the record and was contradicted by its own findings of fact."

Appellant argues that both the OREC and the lower court's decisions were not in accordance with the law. More specifically, appellant avers that the OREC erred as a matter of law in applying the statutory definition set forth in R.C. 4735.01(K). Appellant contends that R.C. 4735.01(K) exempts from the definition of "real estate broker" or "real estate salesperson" any person who owns or acquires any interest in the subject property. Appellant argues that Detwiler had acquired an interest in the subject property and that the OREC erred in implicitly holding that one must have legal title to have an interest in real estate, as this is contrary to statutory and common law, which both interpret "any interest" broadly. Accordingly, appellant contends that the OREC lacked jurisdiction to suspend appellant's license.

The standard of review which the common pleas court is to employ in an administrative appeal is set forth in R.C. 119.12, which states as follows:

"The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with the law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."

■ On appeal under R.C. 119.12, an appellate court shall review evidentiary issues to determine whether the common pleas court abused its discretion in determining whether the agency decision was supported by reliable, probative, and substantial evidence. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748. "Abuse of discretion connotes more than an error of law or of judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable." *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875, 880.

■ Additionally, reviewing courts must independently review matters of law to determine whether the agency decision is unsupported by reliable, probative, and substantial evidence and whether such decision is contrary to law. *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591, 595–596.

■ "Upon review, the commission must be given considerable discretion in a license suspension or revocation hearing in determining whether certain conduct is violative of a set standard of practice in the industry." *Hughes v. Ohio Div. of Real Estate* (1993), 86 Ohio App.3d 757, 760, 621 N.E.2d 1249, 1251, citing *Vradenburg v. Ohio Real Estate Comm.* (1982), 8 Ohio App.3d 102, 104, 8 OBR 136, 138–139, 456 N.E.2d 573, 575–576.

R.C. 4735.01 defines "real estate broker" to include:

"* * * any person, partnership, association, or corporation, foreign or domestic, who for another, whether pursuant to a power of attorney or otherwise, and who for a fee, commission, or other valuable consideration, or with the intention, or in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration:

"(1) Sells, exchanges, purchases, rents, or leases, or negotiates the sale, exchange, purchase, rental, or leasing of any real estate;

"(2) Offers, attempts, or agrees to negotiate the sale, exchange, purchase, rental, or leasing of any real estate;

"(3) Lists, or offers, attempts, or agrees to list, or auctions, or offers, attempts, or agrees to auction, any real estate;

"* * *

"(8) Is employed by or on behalf of the owner of lots, or other parcels of real estate, at a stated salary, or upon a commission, or upon a salary and commission basis or otherwise, to sell such real estate, or any parts of it, in lots or other parcels, and who sells, exchanges, or offers, attempts, or agrees to negotiate the sale or exchange of any such lot or parcel of real estate."

Causes for suspending or revoking a broker's real estate license are set forth in R.C. 4735.18. Specifically, R.C. 4735.18(A)(6) and (34) provided:

"The [OREC] shall * * * impose disciplinary sanctions upon any licensee who, whether or not acting in his capacity as a real estate broker or salesman, or limited real estate broker or salesperson, or in handling the licensee's own property, is found guilty of:

"* * *

"(6) Dishonest or illegal dealing, gross negligence, incompetency, or misconduct;

"* * *

"(34) Having authorized or permitted a person to act as an agent in the capacity of a real estate broker or limited real estate broker, or a real estate salesman or limited real estate salesman, who was not then licensed as a real estate broker, limited real estate broker, real estate salesman, or limited real estate salesman under this chapter."

R.C. 4735.01(K) exempts persons from the statutory definition of "real estate broker" or "real estate sales person" in addition to any acts or transaction performed by such person. R.C. 4735.01(K) stated in part:

"(K) The terms 'real estate broker,' 'real estate salesman,' * * * do not include a person, partnership, association, or corporation * * * who performs any of the acts or transactions specified or comprehended in division (A) of this section, whether or not for, or with the intention, in expectation, or upon promise of receiving or collecting a fee, commission, or other valuable consideration:

"(1) With reference to real estate situated in this state or *any interest* in it owned by such person, partnership, association, or corporation, or acquired on his own account in the regular course of, or as an *incident to the management of the property and the investment in it[.]*"  (Emphasis added.)

This exemption applies both to actual owners and those individuals who have acquired an interest in property on his or her own account through

managing or investing in such property. *Leatherbury v. Reagan* (1987), 34 Ohio App.3d 291, 292, 518 N.E.2d 58, 59–60.

An owner is:

" '* * * The person in whom is vested with the ownership, dominion, or title of property; proprietor. * * *

■ " '* * * The primary meaning of the word as applied to land is one who owns a fee and who has the right to dispose of the property, but the term also includes one having a possessory right to land or the person occupying or cultivating it.' " *Blue Ash Bldg. & Loan Co. v. Hahn* (1984), 20 Ohio App.3d 21, 24, 20 OBR 22, 25, 484 N.E.2d 186, 189, quoting Black's Law Dictionary (5 Ed.1979) 996.

Comparatively, an "equitable owner" is:

" 'One who is recognized in equity as the owner of property, because the real and beneficial use and title belong to him, although the bare legal title is vested in another * * *. One who has a present title in land which will ripen into legal ownership upon the performance of conditions subsequent. There may therefore be two "owners" in respect of the same property, one the nominal or legal owner, the other the beneficial or equitable owner.' " *Id.*

The Restatement of the Law, Property (1929) construes an interest in land broadly and states:

"Section 5. Interest.

"The word 'interest' is used in this Restatement both generically to include varying aggregates of rights, powers and immunities and distributively to mean any one of them."

Comment *c* further states:

"*c.* Interest in land or other thing. There are rights, privileges, powers, and immunities with regard to specific land * * * which exist only in a particular person. By virtue of the fact that a person has these special interests, other than and in addition to those possessed by members of the society in general, he occupies a peculiar and individual position with regard thereto. Interests of this type * * * are designated herein as 'interests in land.' "

Finally, R.C. 4735.01(B) interprets "interest" broadly by defining "real estate" as follows:

"(B) 'Real estate' includes leaseholds as well as any and every interest or estate in land situated in this state, whether corporeal or incorporeal, whether freehold or nonfreehold, and the improvements on the land, but does not include cemetery interment rights."

■ The crucial issue in this appeal is whether Detwiler owned or acquired "any interest" in the subject property in order to fall under the exemption of R.C. 4735.01(K). The lower court's finding that Detwiler did not have a cognizable interest in the subject property was not in accordance with law and, consequently, the OREC lacked jurisdiction to suspend appellant's license.

The evidence establishes that Detwiler had an interest in the subject property. Appellant and Detwiler formed a joint venture agreement that resulted in Detwiler's acquiring an interest in the real estate. Appellant supplied the $10,000 down payment, gave a mortgage for the balance, and held legal title to the property. Detwiler assumed expenses for most repairs, supervised and managed repairs and other activities commensurate with the property, and marketed and negotiated the property for resale. Furthermore, Detwiler shared equally in the mortgage payments, alternating monthly payments with appellant, and placed the utilities solely in his name. Additionally, Detwiler invested $2,800 of his own money to improve the existing sewage system of the subject property.

R.C. 4735.01(K)(1) explicitly excludes from the purview of R.C. 4735.01(A) any person or partnership with reference to real estate "owned by such person, partnership * * * or acquired in his own account in the regular course of, or as an incident to the management of the property and the investment in it." Detwiler falls within the parameters of this paragraph. Detwiler's and appellant's manifestations exhibit that they intended to create a joint venture for the purpose of buying and selling the subject property for a profit. Appellant's testimony exhibits that he and Detwiler formed a joint venture agreement and that he considered Detwiler a copartner. The record states:

"Q: Also in connection with the property on South Avenue Extension, did you authorize or permit Mr. Detwiler to place an ad in a newspaper to sell this property, I think we've marked that State's Exhibit 8?

"A: Mr. Detwiler and I were partners in the property so he didn't need my authorization; he was acting on his own behalf and my behalf as co-owners.

"* * *

"Q: Well, would you reiterate? Did you come to an agreement with Mr. Detwiler?

"A: We did. I supplied the down payment of $10,000. Mr. Detwiler was to supply most of the labor and leg work. I didn't have the time to do that. I kept title to the property because I had $10,000 invested in it and Mr. Detwiler in fact only had his time invested in it. I mentioned that I could have taken back a second mortgage from Mr. Detwiler and put him on the deed but it just seemed like unnecessary paperwork since we had been able to work together prior to that without any written agreements.

"* * *

"Q: What was the purpose of your agreement with Mr. Detwiler?

"A: Just to purchase the property and hopefully sell it at a profit."

■ Equitable ownership contemplates that there may be two "owners" of the same property, one the legal owner and the other the beneficial owner. Although appellant held legal title to the property, the record demonstrates that by virtue of the parties' agreement and Detwiler's management responsibility, Detwiler had acquired an equitable ownership interest in the subject property. Such equitable incidents of ownership include Detwiler's out-of-pocket expenditures in the course of the repairs he made, the utilities being placed in Detwiler's name, and Detwiler's sharing equally in the responsibility for the monthly mortgage payments. Furthermore, both the Restatement of the Law, Property, and R.C 4735.01(B) interpret "any interest" broadly.

Both the OREC and the lower court misinterpreted the exemption set forth R.C. 4735.01(K). As a result, their decision to suspend appellant's broker's license because they found that Detwiler did not have a cognizable interest in the subject property, and, thus, did not qualify for the exemption of R.C. 4735.01(K) was not in accordance with law. Accordingly, the OREC had no jurisdiction to suspend appellant's license.

Appellant's first assignment of error is found to be with merit.

Appellant's second assignment of error alleges:

"The trial court further erred by adopting and approving the decision of the magistrate without considering the written objections and notice of appeal filed by appellant, nor granting a hearing thereon, in violation of Civil Rule 53(e)(4). The failure to do so was an abuse of discretion."

This court need not address appellant's second assignment of error. By virtue of this court's finding that appellant's first assignment of error was with merit, appellant's second assignment of error is moot.

The judgment of the lower court is reversed, and this cause is remanded for further proceedings according to law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GENE DONOFRIO, P.J., and WAITE, J., concur.