[Cite as *Dept. of Youth Servs. v. Grimsley*, 2019-Ohio-888.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Department of Youth Services, | : | |
| Appellant-Appellant, | : | No. 18AP-546<br>(C.P.C. No. 16CV-4441) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Dan Grimsley, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on March 14, 2019

**On brief:** *[Dave Yost]*, Attorney General, and *Erin E. Butcher*, for appellant. **Argued:** *Erin E. Butcher.*

**On brief:** *B. Zimmerman Law*, and *Brian L. Zimmerman*, for appellee. **Argued:** *Brian L. Zimmerman.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Appellant-appellant, Department of Youth Services ("DYS"), appeals from a decision and entry of the Franklin County Court of Common Pleas affirming the order of the State Personnel Board of Review ("SPBR") disaffirming an order of DYS that removed appellee-appellee, Dan Grimsley, from his employment with DYS. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On August 31, 2013, Grimsley was acting in his capacity as an operations manager at DYS's Indian River Juvenile Correction Facility when he became involved in a physical altercation with a youth incarcerated at the facility. The incident was recorded on video. Following an administrative investigation into the incident, DYS issued a January 22,

2014 order recommending Grimsley's removal from his employment. DYS stated in its order that Grimsley's actions violated DYS Policy 103.17, including the following rule violations: (1) use of excessive force without injury, in violation of Rule 4.09P; (2) failure to follow policies and procedures regarding managing youth resistance and use of force, in violation of Rule 5.01P; and (3) use of prohibited physical response, in violation of Rule 6.05P.

{¶ 3} Grimsley timely appealed DYS's removal order to the SPBR. An administrative law judge ("ALJ") conducted a full evidentiary hearing on October 20, 2014 and February 9, 2015. At the hearing, several DYS personnel, including Grimsley, testified regarding the incident. The ALJ also considered other documentary evidence as well as the video recording of the altercation.

{¶ 4} On December 2, 2015, the ALJ issued a report and recommendation finding there was no dispute that Grimsley struck a youth with a closed fist during the altercation that led to Grimsley's removal. The ALJ further found that striking a youth is a prohibited use of physical response but noted that the parties agreed "that use of prohibited forms of physical response are permissible in an emergency defense situation." (ALJ Report and Recommendation at 4.) Based on the evidence at the hearings, the ALJ concluded that Grimsley made a reasonable and justifiable determination that an emergency defense was warranted and that Grimsley's use of force was not excessive. Pursuant to these findings, the ALJ concluded that Grimsley's conduct did not violate DYS's policies and recommended that SPBR disallow Grimsley's removal by DYS.

{¶ 5} Along with the primary recommendation, the ALJ also included an alternative recommendation that if SPBR should determine that Grimsley's use of force was unjustified, Grimsley's removal should be modified to a 30-day suspension. In a unanimous decision issued April 22, 2016, SPBR adopted the ALJ's recommendation and disaffirmed Grimsley's removal.

{¶ 6} On appeal to the common pleas court, the common pleas court issued an August 30, 2016 decision that purported to affirm SPBR's order. However, the common pleas court erroneously stated that while SPBR had disaffirmed Grimsley's removal, SPBR had also imposed discipline in the form of a 30-day suspension. On appeal to this court, we noted that SPBR "imposed no discipline, since it found that Grimsley's use of force was

justified and did not violate DYS policy." *Dept. of Youth Servs. v. Grimsley*, 10th Dist. No. 16AP-682, 2018-Ohio-1530, ¶ 20. We reversed the decision of the court of common pleas to address the error of purporting to uphold SPBR's imposition of a 30-day suspension as that outcome would not be consistent with a determination that Grimsley's use of force did not violate DYS policy. Thus, we instructed the common pleas court, on remand "to determine as a matter of law whether there is reliable, probative, and substantial evidence to support SPBR's April 22, 2016 order disaffirming Grimsley's removal." *Id.* at ¶ 21.

{¶ 7} On remand, the trial court issued a June 6, 2018 decision and entry specifically noting that the ALJ concluded that Grimsley's use of force was reasonable and justifiable and, as a result, Grimsley's conduct did not violate DYS policies. The trial court additionally noted that SPBR subsequently adopted the ALJ's conclusions. The trial court then examined the evidence in the record and concluded, as a matter of law, that there is reliable, probative, and substantial evidence to support SPBR's April 22, 2016 order disaffirming Grimsley's removal. DYS timely appeals.

## II. Assignments of Error

{¶ 8} DYS assigns the following errors for our review:

> [1.] It is not in accordance with the law to substitute a subjective standard over the Department of Youth Service's objective-standard interpretation of its own rule—an issue of law the common pleas court did not analyze—especially where the subjective standard would swallow the rule governing when an employee can enact emergency defense and strike a youth in the Department's custody.
>
> [2.] The common pleas court's affirmation of the State Personnel Board of Review's order was an abuse of discretion because the order is unsupported by reliable, probative and substantial evidence.

## III. Standard of Review

{¶ 9} In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980). The common pleas court's "review of the administrative record is neither a trial de novo nor an

appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. On questions of law, the common pleas court conducts a de novo review, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), quoting R.C. 119.12.

{¶ 10} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). On review of purely legal questions, however, an appellate court has de novo review. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

## IV. First Assignment of Error – Subjective Standard

{¶ 11} In its first assignment of error, DYS argues the trial court erred when it construed DYS's policy related to the use of force to require a subjective standard rather than an objective standard of reasonableness in determining whether force is justified.

{¶ 12} The ALJ's report and recommendation states "Policy 301.05, SOP 301-05-01, and Rule 6.05P all require a subjective determination by the individual involved in the situation as to whether or not a risk of severe bodily injury or death exists" before engaging in a prohibited physical response. (ALJ Report and Recommendation at 5.) In affirming SPBR's decision adopting the ALJ's report and recommendation, the trial court quoted from this portion of the ALJ's report and recommendation before concluding reliable, probative, and substantial evidence support SPBR's order and that the order is in accordance with the law. DYS argues those policies actually require an objective standard of reasonableness in determining whether force is justified and, as a result, the trial court erred in agreeing with the ALJ's interpretation of the policies.

{¶ 13} Pursuant to DYS's policy, prohibited physical response "[m]ay not be used unless in an emergency defense situation to prevent an act which could result in death or severe bodily injury to oneself or to others." (Record of Proceedings E2550-H78, DYS General Work Rules Rule Violations, Rule 6.05P.) DYS Standard Operating Procedure 301-05-01 further provides "[p]hysical response shall be used as the last resort and may only be used in instances of justifiable self defense from assault by a youth, protection of others, protection of property, prevention of self-injury, and to prevent escape." (Record of Proceedings E2550-H85, DYS Standard Operating Policy 301-05-01.) Under DYS Policy 301-05-01, the only permissible circumstance under which a DYS employee can punch a youth is in emergency defense "to prevent an act which could result in death or severe bodily injury to one's self or to others." (Record of Proceedings E2550-A27, Oct. 20, 2014 SPBR Tr. Vol. I at 25.) In reviewing a use of force, DYS reviews the incident to determine whether "the incident created a threat as perceived by a reasonable staff person." (Record of Proceedings E2550-H89, DYS Standard Operating Procedure 301-05-01-(H)(1)(c).) DYS argues these policies and rules are intended to impose an objective standard of reasonableness.

{¶ 14} Even if we were to defer to DYS's interpretation of its own policies, as DYS argues, DYS personnel testified during Grimsley's hearing that the determination of when to use force requires, at least in part, a subjective determination by the actor. Tim Gillis, an investigator for DYS, testified that if a staff member "believes" either himself or another staff member is in fear of death or severe injury prohibited techniques of force are permitted. (Record of Proceedings E2550-C86, Oct. 20, 2014 SPBR Tr. Vol. I at 113.) Gillis further agreed that a staff member's belief that they are reacting to an emergency defense is a "pretty subjective" standard. (Record of Proceedings E2550-C87, Oct. 20, 2014 SPBR Tr. Vol. I at 120.) Amy Ast, DYS's bureau chief of facility operations, also testified that it is for the person reacting to an emergency situation to determine whether the use of force is warranted in the moment. Jeffrey Pritchard, the former operations administrator at Indian River, testified that the staff member who engages in the use of force is the one who would have to determine, in the first instance, whether he or she felt a threat of death or serious injury.

{¶ 15} Despite this testimony from DYS personnel, DYS nonetheless insists that its policies are intended to impose solely an objective standard on the use of force in emergency defense situations. DYS argues that the trial court's adoption of the ALJ's interpretation of DYS's policies related to the use of force will result in situations in which any staff member can use force on a youth and escape any sort of culpability or adverse employment action by simply claiming they subjectively believed they were in danger. Through this argument, DYS focuses solely on whether a test is subjective or objective and ignores completely that DYS's policies, by their plain language, require that the use of force must be reasonable. Stated another way, DYS appears to conflate "subjective/objective" with "reasonableness." The ALJ clarified as much when she stated that Grimsley's determination, a necessarily subjective determination, that he or his colleagues were at risk of severe bodily injury and that an emergency defense was warranted was "both reasonable and justifiable." (ALJ Report and Recommendation at 5.)

{¶ 16} By way of analogy, we look to self-defense in criminal law. Ohio law employs a test for self-defense in the criminal context that is both subjective and objective. *State v. Stevenson*, 10th Dist. No. 17AP-512, 2018-Ohio-5140, ¶ 42, citing *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997). To successfully claim self-defense in a criminal context, a defendant must show both that he had a subjective belief that he was in imminent danger of death or great bodily harm *and* that his belief was justified and reasonable. *Stevenson* at ¶ 42. Similarly here, DYS's own policies employ language that imposes both a subjective and objective test for the use of force in emergency defense.

{¶ 17} In arguing the trial court imposed a solely subjective test, DYS is reading selective portions of the ALJ's and trial court's decisions out of context. Accordingly, we find the trial court did not err in its construction of DYS's policies as requiring both a subjective belief of fear and an objective standard of reasonableness. We overrule DYS's first assignment of error.

## V. Second Assignment of Error – Reliable, Probative, and Substantial Evidence

{¶ 18} In its second assignment of error, DYS argues the trial court abused its discretion when it concluded there was reliable, probative, and substantial evidence to support SPBR's order.

{¶ 19} SPBR's April 22, 2016 order adopted the recommendation of the ALJ to disaffirm Grimsley's removal. In so doing, SPBR agreed with the ALJ's finding that Grimsley's conduct did not violate DYS's policies. More specifically, the ALJ and SPBR concluded that Grimsley had a reasonable fear that either he or his colleagues were in imminent danger of death or severe bodily injury and that his use of force against the youth in response was reasonable and justified. The trial court, in affirming SPBR's order, similarly concluded that Grimsley did not violate DYS's policies when he engaged in a prohibited use of force to diffuse the interaction with the youth.

{¶ 20} Under DYS Policy 301-05-01, the only permissible circumstance under which a DYS employee can punch a youth is in emergency defense "to prevent an act which could result in death or severe bodily injury to one's self or to others." (Record of Proceedings E2550-A27, Oct. 20, 2014 SPBR Tr. Vol. I at 25.) DYS argues that the evidence shows that by the time Grimsley swung his fist at the youth, Grimsley was no longer acting in emergency defense and therefore his use of force was not justified. The video recording of the incident shows the youth charge at another DYS employee swinging his fist and the youth falls to the floor in the ensuing scuffle. While on his back, the youth continues to kick the other DYS employee. At this point, Grimsley falls to the floor with the youth in what appears to be an effort to subdue the youth. When Grimsley is on the floor, the youth continues to kick and flail at the DYS employees, resisting their efforts to subdue him, and Grimsley can be heard saying "[d]on't hit me, buddy." (Video 1:03-1:06.) The youth is still flailing on the floor fighting the restraint of three DYS employees when Grimsley swings his fist toward the youth's face in three quick motions.

{¶ 21} DYS characterizes the video as shocking and egregious. DYS relies on the United States Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), for the proposition that where video evidence clearly contradicts a party's account of events, a court should avoid adopting implausible accounts of clear video evidence.

{¶ 22} The crux of DYS's argument is that the trial court abused its discretion by not giving greater weight to the video recording of the altercation between Grimsley and the youth. However, the trial court considered the video in conjunction with the eyewitness testimony of other DYS employees who were present and witnessed the altercation. Dr. Andrew Bixler, a psychologist at Indian River's mental health unit, testified that the

youth was resisting the rules, the youth instigated the incident, and that Grimsley was defending himself and was trying to gain control of the situation. Additionally, Emily Parker, a juvenile correction officer at DYS, witnessed the altercation and testified she was operating the camera that recorded the altercation. Parker testified that Grimsley was trying to restrain the youth during the entire altercation.

{¶ 23} Despite DYS's efforts to characterize the video as the only relevant evidence, DYS does not explain how it would be an abuse of discretion for the trial court to consider the video in conjunction with the testimony of the individuals who witnessed the incident in person. The necessity of considering the video as one piece of evidence and not as the only piece of evidence is heightened by our observation that the video, standing alone, would not support a conclusion one way or the other about whether Grimsley had violated DYS policy. It offers a partial picture of the altercation as it unfolded, but it does not offer the complete picture. The testimony of the people who witnessed the incident in person is not clearly contradictory to the video evidence, as in *Scott*; instead, the testimony provides a fuller picture of what transpired in the short amount of time in which the incident unfolded.

{¶ 24} Additionally, we are mindful that the common pleas court reviewed the video in light of DYS's stipulation at the hearing that the youth suffered no injury as a result of this altercation. This stipulation undercuts DYS's characterization of the encounter as shocking and egregious.

{¶ 25} DYS additionally asserts the witnesses the common pleas court relied upon were unreliable. DYS focuses on alleged inconsistencies in the testimony of Parker and Dr. Bixler. Specifically, DYS notes that Dr. Bixler stated the incident was "a little bit of a blur," and Parker stated in her initial interview during the investigation that she was more focused on operating the camera than on observing the incident in detail. (Record of Proceedings E2550-D60, Feb. 9, 2015 SPBR Tr. Vol. II at 274.) Despite pointing out these alleged inconsistencies, DYS does not explain how they should render Dr. Bixler's and Parker's testimony otherwise unreliable. Moreover, as the trier of fact, the common pleas court was in the best position to take note of these inconsistencies and resolve them accordingly. *Tzangas, Plakas & Mannos v. Admr., Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696 (1995).

{¶ 26} Having reviewed the entire record, we find that both the video evidence and the eyewitness testimony, taken together, provide the necessary evidence to review the incident. Though DYS continues to assert the video should speak for itself, the trial court did not abuse its discretion in considering all the evidence in the record and assigning weight to that evidence. Therefore, we conclude the common pleas court did not abuse its discretion in concluding reliable, substantial, and probative evidence supports SPBR's order finding Grimsley did not violate DYS's policies related to the use of force. Thus, the trial court did not err in affirming the order of SPBR disaffirming Grimsley's termination. Accordingly, we overrule DYS's second and final assignment of error.

## VI. Disposition

{¶ 27} Based on the foregoing reasons, the trial court did not err in its interpretation of DYS's policies related to the use of force, and the trial court did not abuse its discretion in determining reliable, probative, and substantial evidence supports SPBR's order. Having overruled DYS's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.