[Cite as *Harding v. Ohio Real Estate Comm.*, 2023-Ohio-3138.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Angela Harding

      Appellant

v.

Ohio Real Estate Commission

      Appellee

Court of Appeals No.  L-23-1010

Trial Court No.  CI0202203138

**<u>DECISION AND JUDGMENT</u>**

Decided:  September 1, 2023

* * * * *

David L. Petitjean, for appellant

David Yost, Ohio Attorney General and
Elizabeth S. Fligner, Senior Assistant Attorney
General, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Angela F. Harding, appeals from a judgment of the Lucas County

Court of Common Pleas affirming an adjudication order by appellee, the Ohio Real

Estate Commission ("OREC"), that found Harding violated Chapter 4735 of the Ohio

Revised Code.  We affirm.

## I. Background

{¶ 2} Harding holds a real estate broker's license with the Ohio Department of Commerce, Division of Real Estate and Professional Licensing ("the Division").

{¶ 3} In October of 2013, Harding entered into a land contract with Breck Properties Ltd. for the purchase of property located at 5012 Maryhill Road in Sylvania, Ohio. Kathryn Long is the sole shareholder of Breck Properties. The property was intended to serve as Harding's primary residence.

{¶ 4} The purchase price of the property was $113,900, and Harding paid Long an initial down payment of $7,500. Under the terms of the land contract, Harding was required to pay the balance of $106,400 at seven percent interest over 30 years, through a monthly payment of $707.88. Upon payment in full of all sums owed, Long, acting on behalf of Breck Properties, agreed to deliver to Harding "a good and sufficient warranty deed conveying title to the land."

{¶ 5} On November 7, 2016, Long filed a complaint against Harding with the Division. Long alleged that Harding had listed the property for sale without her consent, in violation of real estate licensing laws and the land contract.

{¶ 6} Following an investigation, the Division sent Harding a notification that it had found "reasonable and substantial evidence of acts" in violation of R.C. 4735.18 ("Grounds for suspension or revocation of license") and that, if the violations were proven, disciplinary action could be taken against Harding's license. Specifically, the complaint alleged that,

2.

You, Angela Faye Harding, a licensed principal real estate broker * * * did the following sometime between on or about June 26, 2016 and on or about July 11, 2016, involving the property at 5012 Maryhill Road, Sylvania, Ohio (subject property):

Despite entering into a land contract for the subject property, dated October 25, 2013 (land contract), as a buyer, which specifically prohibited the transfer of your interest in the land contract to another party without prior written consent by Breck Properties, Ltd. (seller), you attempted to sell the subject property with a sign in the subject property's yard or through an advertisement in the multiple listing service with [listing agent] * * *, without prior written consent of the seller. This conduct constitutes a violation of Ohio Revised Code Section 4735.18(A)(17) or Ohio Revised Code Section 4735.18(A)(6), misconduct as that section incorporates Section, Article I of the Canons of Ethics for the Real Estate Industry, a failure to maintain high standards of conduct in a licensee's personal affairs.

{¶ 7} A hearing was held before a hearing examiner on July 30, 2021. Three witnesses testified: Investigator George Burton, Long, and Harding.

{¶ 8} According to Long, Harding asked her, in June of 2016, if she (Harding) could "list the property and sell it." When asked what she would do with any profits from the sale, Harding said that she would pay off the remaining balance owed to Long

3.

and "keep" the rest. Long told Harding that she could "[a]bsolutely not" list the property because "[i]t wasn't hers to sell."

{¶ 9} The conversation caused Long to "wonder * * * what [Harding] was up to." And so, about a week later, in July, "[Long] drove past the house" and saw a real estate sign in the yard. Long's testimony on this point conflicted with her previous claim, made in her "Real Estate Complaint Form," in which she specified that she "looked up [the] property on line and found [that Harding had] listed it." According to the complaint, Long "*sent [her] husband* to the property to verify if there was a sign in the yard and he took a picture." (Emphasis added.)

{¶ 10} In any event, the listing agent identified on the yard sign was Sarah Ford of Key Realty. Long went "directly to the real estate agen[cy]" and told someone there, "I own [the property] myself." Long was told that Harding had taken the property "off the market as of June 29th," notwithstanding that the sign remained in the yard. Long demanded that the agency "get that sign out of my yard" and gave them "til noon." Later that day, a broker with Key Realty called Long to apologize and reported that "they were duped as well."

{¶ 11} During Harding's testimony, she denied having a conversation with Long, or asking for permission from her to list the property. Harding testified that, before listing it, she consulted with her attorney, who explained that she had an "equitable interest" in the property and "because [she] had an equitable interest," she did not need Long's permission to list it. Harding also understood that her right to "transfer interest"

4.

in the property to a third party was subject to Long being "paid off [first] * * * which would be done at closing." Before listing the property, Key Realty "review[ed] all the documentation."

{¶ 12} The listing with Key was in effect from June 28, 2016 until July 11, 2016, when Harding "pull[ed] the listing." Harding explained that she pulled the listing because it was "an overwhelming time" in her life. "Shortly after" that, Harding learned from Key Realty that Long had complained about the sign, but Long never personally contacted her to discuss it. Harding testified that she believes she "acted with full ethics from the beginning of this transaction to the end, including [when she] list[ed] the property."

{¶ 13} Harding and her husband decided to terminate the land contract and return the property to Long. On November 2, 2016, the parties executed a "Cancelation of Land Contract" and a mutual release. Five days later, on November 7, 2016, Long filed a complaint against Harding, giving rise to the instant case.

## II. The Report and Recommendation of the Hearing Officer

{¶ 14} The hearing examiner issued a Report and Recommendation on October 13, 2021, which included the following findings of fact and conclusions of law:

> Both Harding and Long had an ownership interest in the property, Harding as "equitable owner" and Long as "legal owner."

Harding entered into a listing agreement with Realtor Sarah Ford, of Key Realty, to sell the Maryhill property, and a "for sale" sign was placed on the property. The listing date was June 28, 2016.

Harding, as an equitable owner, did not transfer any interest or title in the subject property by entering into the listing agreement with Key Realty. The listing agreement gave no equitable interest in the land contract or the property. "The act of entering into [the Exclusive Right to Sell Listing] Agreement to list the property for sale was within the ownership rights of [Harding]."

Harding was represented by legal counsel "at all stages during this process and received legal advice regarding her equitable interest." Based upon her attorney's advice, Harding believed that she "was able to list and attempt to sell" the property to satisfy the amount owed under the land contract.

Long, whose "credibility [was] questionable," withheld her consent for the sale of the property, "at least in part" because Harding "would be able to keep the excess profits" if the property was sold.

Harding, "whose testimony was credible, was represented by an attorney and decided to sell the property to satisfy the balloon payments she owed to complete the land contract."

6.

"Based on the facts of this case and the rights of both parties under the Land Contract, the State has provided no evidence that [Harding] engaged in dishonest or illegal dealings gross negligence, or incompetency" as require to establish a violation under R.C. 4735.18(A)(6).

Additionally, Harding, as equitable owner, had "actual control of the subject property" and was "within her rights to place a 'For Sale' sign in the yard of the subject property and list the property in the MLS database. As such, Respondent did not violate [R.C.] 4735.18(A)(17) when she did not received [sic] written consent by [Long]."

The hearing examiner's report includes the following "Recommendation:"

[T]he state failed to provided sufficient, reliable, and probative evidence that Ms. Harding was guilty of the alleged violations of Ohio law. Ms. Harding (1) had equitable ownership rights under the Land Contract, which included a right to list the subject property for sale and to enter into an Exclusive Right to Sell Listing Agreement; and (2) did not transfer any of her interest or title in the subject property without the written consent of [Long]. Furthermore, if the Land Contract were completed and a transfer of the legal title had to occur, the requirement for written consent for [Harding] to transfer the legal title to the subject property would have no longer existed. It is, therefore, recommended to [OREC] that Ms. Harding is found

not guilty of violating [R.C. 4735.18(A)(17) and (A)(6)], which incorporates Article I, Section I of the Canons of Ethics for the Real Estate Industry.

{¶ 15} The hearing examiner's report went before OREC for a review hearing on July 6, 2022. The hearing was limited to arguments made by the parties' respective counsel. No additional evidence or testimony was presented.

{¶ 16} By Adjudication Order dated July 13, 2022, OREC adopted the hearing officer's findings of fact but rejected her conclusions of law, "specifically [with respect to R.C.] 4735.18(A)(17)." It imposed a penalty of $500 and ordered Harding to complete three hours of additional education. OREC made no mention, or any finding, with respect to Harding's alleged violation of R.C. 4735.18(A)(6).

{¶ 17} Harding appealed to the Lucas County Court of Common Pleas, pursuant to R.C. 119.12. Upon review of the record, the trial court found that the OREC 's Adjudication Order, as to the R.C. 4735.18(A)(17) violation, was "supported by reliable, probative, and substantial evidence and [was] in accordance with the law."

{¶ 18} Harding appealed and raises four assignments of error for our review:

1. The Trial Court Decision Does Not Provide A Legal Basis Establishing That The OREC's Adjudication Order Was In Accordance with Ohio Law.

2. The Trial Court's Decision And The OREC's Adjudication Order Are Contrary To Ohio Law.

8.

3. The Trial Court's Decision and The OREC's Adjudication Order Provide No Legal Basis for the Decisions.

4. The Trial Court's Decision Affirming the OREC's Adjudication Order Creates A New Standard for Licensed Real Estate Brokers And The OREC Has Not Provided Licensed Real Estate Brokers With Any Prior Notice of This New Standard And Violated Plaintiff-Appellant's Right to Due Process.

### III. Standard of Review

{¶ 19} The standard of review in an administrative appeal under R.C. 119.12 is "well-established." *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096, ¶ 34.

{¶ 20} R.C. 119.12(M) sets forth the standard of review employed by the common pleas court. It provides,

> The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

9.

**{¶ 21}** As explained by the Ohio Supreme Court in *Bartchy*, the common pleas court conducts two inquiries: a hybrid factual/legal inquiry and a purely legal inquiry:

As to the first inquiry, * * * [a]n agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable. * * *

As to the second, legal part of the common pleas court's inquiry, an agency adjudication is like a trial, and while the reviewing court must defer to the lower tribunal's findings of fact, it must construe the law on its own. (Quotation omitted.)

*Id.* at ¶ 37–38, citing *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 470–471, 613 N.E.2d 591 (1993).

**{¶ 22}** An appellate court's role is more limited. Under R.C. 119.12(N),

[E]ither * * * the party or the agency may appeal. * * * An appeal by the agency shall be taken on questions of law relating to the constitutionality, construction, or interpretation of statutes and rules of the agency, and, in the appeal, the court may also review and determine the correctness of the judgment of the court of common pleas that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record.

10.

While the trial court examines the evidence, the appellate court is "to determine only if the trial court has abused its discretion in its examination of the record for reliable, probative, and substantial evidence." *Bartchy* at ¶ 41. *"*On review of purely legal questions, however, an appellate court has *de novo* review." *Dep't of Youth Servs. v. Grimsley,* 10th Dist. Franklin No. 18AP-546, 2019-Ohio-888, ¶ 10. Indeed, in our constitutional system, it is exclusively "the province and duty of the judicial department to say what the law is." *TWISM Enterprises, L.L.C. v. State Bd. of Registration for Pro. Engineers & Surveyors*, Slip Opinion 2022-Ohio-4677, ¶ 42, quoting *Marbury v. Madison,* 5 U.S. 137, 177, 2 L.Ed. 60 (1803) ("[I]t is never mandatory for a court to defer to the judgment of an administrative agency.").

## IV. OREC's adjudication order provided sufficient reasons in support of its decision under R.C. 119.09, and therefore, the common pleas court did not err in affirming it.

{¶ 23} We consider Harding's first and third assignments of error together. In the first, Harding claims that the trial court and OREC both failed to "provide a legal analysis" to support a finding that Harding violated R.C. 4735.18(A)(17). In her third assignment of error, Harding again complains that the tribunals "provide[d] no legal analysis." More specifically, Harding alleges that OREC failed to "include in the record of its proceedings the reasons for [its] modification or disapproval" of the hearing examiner's determination, as required by R.C. 119.09, and that the trial court erred by affirming OREC's decision for this reason. We disagree.

{¶ 24} R.C. 119.09 ("Adjudication hearing") provides, in relevant part,

In any adjudication hearing required by sections 119.01 to 119.13 of the Revised Code, the agency may appoint a referee or examiner to conduct the hearing. * * * The referee or examiner shall submit to the agency a written report setting forth the referee's or examiner's findings of fact and conclusions of law and a recommendation of the action to be taken by the agency. * * * The recommendation of the referee or examiner may be approved, modified, or disapproved by the agency, and the order of the agency based on such report, recommendation, transcript of testimony and evidence, or objections of the parties, and additional testimony and evidence shall have the same effect as if such hearing had been conducted by the agency. * * * *[I]f the agency modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval.* (Emphasis added.)

{¶ 25} Here, the hearing officer concluded that Harding did not violate R.C. 4735.18(A)(17)—which prohibits offering any property for sale "without the consent of the owner"—because Harding "was an equitable owner." OREC "reject[ed] the Conclusions of Law of the hearing examiner," finding instead that Harding "violated her duties * * * as a real estate licensee, specifically [R.C.] 4735.18(A)(17)." On appeal, Harding complains that OREC failed to provide any "reasons" for that decision, in violation of R.C. 119.09.

12.

{¶ 26} R.C. 119.09's "requirement"—that a board provide reasons when modifying or disapproving a hearing examiner's recommendation—is "mandatory." *Bennett v. State Medical Board of Ohio,* 10th Dist. Franklin No. 10AP-833, 2011-Ohio-3158, ¶ 16. And, where a board fails to do so, the resulting order "is not in accordance with [the] law and must be overturned on that basis. (Quotation omitted.) *Lucas v. Ohio State Bd. of Educ.,* 10th Dist. Franklin No. 19AP-463, 2020-Ohio-2738, ¶ 31 (Finding an order—that failed to identify "specific grounds" for the board's disapproval of the hearing officer's recommendation—did not meet the "minimal threshold for satisfying the R.C. 119.09 requirement."); *see also Zingale v. Ohio Casino Control Comm.,* 8th Dist. Cuyahoga No. 101381, 2014-Ohio-4937, ¶ 66. However, it has also been held that the "'barest of explanations' [will] suffice to satisfy the requirements of R.C. 119.09." *Snyder v. Ohio Real Estate Appraiser Board,* 5th Dist. Tuscarawas No. 2016AP0058, 2017-Ohio-5790, ¶ 37, quoting *Matter of Euclid,* 10th Dist. Franklin No. 93AP-138, 1993 WL 317239 (Aug. 19, 1993). "All that is required is that the board include within the record of its proceedings its reasons for rejecting the referee's recommendation." *Id.* For example, when reviewing a board's decision for compliance with R.C. 119.09, a common pleas court may consider "meeting minutes, together with the Board's actions" and any "objections in the record." *Bennett* at ¶ 18-19 and *Snyder* at ¶ 37. In *Bennett,* the court found that "member comments" set forth in the hearing transcript, the state's objection to the report, and "the absence of any comments supporting the hearing examiner's legal conclusion" all combined to demonstrate compliance with R.C. 119.09.

13.

{¶ 27} In this case, the record includes the 32-page transcript from the review hearing before OREC.  Following arguments by counsel, OREC recessed and entered into off-the-record deliberations.  When the hearing resumed, the president of OREC offered the following:

> Based on our review of the record and the Hearing Officer's Recommendation to us, we've had quite a lengthy discussion of ownership and what it provides under R.C. 4735.18.
>
> I am of the opinion that although the vendee [Harding] did have a right to exercise [her right] to sell her interest in the Land Contract, I do believe * * * the vendor [Long] still had rights as an owner, and therefore, under 4735.18(A)(17), the vendee could not advertise or place a sign on the property for sale or rent without the consent of the vendor * * *.  So I am of the opinion to * * * to adopt the finding of facts, but reject the conclusions of law of the Hearing Officer.

{¶ 28} A similar opinion was offered by another OREC member.  Following a motion, the commissioners voted in favor of finding that Harding violated Section (A)(17), by a four-to-one vote.  The written Adjudication Order followed.

{¶ 29} We find that OREC clearly satisfied the requirement that it provide reasons in support of its decision to "modify or disapprove" of the hearing officer's recommendation, in compliance with R.C. 119.09.

14.

{¶ 30} As for Harding's claim that the trial court also failed to provide a "legal basis" or "legal analysis" in support of its decision, we note that the common pleas court, unlike OREC, was under no obligation to make any particular findings or provide "reasons" for its decision. In its 14-page Opinion and Judgment Entry, the common pleas court found that the adjudication order was supported by "reliable, probative, and substantial evidence and [was] in accordance with the law," which was exactly its mandate under R.C. 119.12(M). Accordingly, we find that Harding's first assignment of error (that the trial court erred by failing to "provide a legal analysis") and her the third assignment of error (that the tribunals erred by "provid[ing] no legal basis for the[ir] decisions") are not well-taken.

## V. The lower court's determination that Harding violated R.C. 4735.18(A)(17) is not contrary to law.

{¶ 31} In her second assignment of error, Harding claims that the lower court's determination is contrary to law. The lower court found that OREC's conclusion that Harding violated R.C. 4735.18(A)(17) is supported by "reliable, probative, and substantial evidence and [was] in accordance with the law."

{¶ 32} Under R.C. 4735.18(A)(17), a real estate licensee may be sanctioned if "found guilty of * * * [h]aving advertised or placed a sign on any property offering it for sale or for rent without the consent of *the owner* or the owner's authorized agent." (Emphasis added). Harding argues that because she is an equitable owner of the property pursuant to the parties' land contract, she is an "owner" under R.C. 4735.18(A)(17) and therefore did not violate the statute.

15.

{¶ 33} Under Ohio law, a land contract is defined as "an executory agreement * * * under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation." R.C. 5313.01. Here, there is no dispute that the vendor— Long, acting on behalf of Breck Properties— was the title owner of the property. Similarly, there is no dispute that Harding, as vendee, had an "equitable interest in the property," which included a right to possess the property and a corresponding obligation to pay, for example, the property taxes and insurance. *See, e.g., Bradford v. B & P Wrecking Co.*, 171 Ohio App.3d 616, 2007-Ohio-1732, 872 N.E.2d 331, ¶ 28 (6th Dist.), quoting *Lee v. Sanders,* 11th Dist. Trumbull No. 2004–T–0024, 2005-Ohio-2091, ¶ 12 ("[V]endees [to a land contract] do not obtain legal title to the premises immediately; instead, they have only 'a possessory equitable interest relative to the amount of the purchase money that has been paid.'"). Thus, there is no disagreement that Long, in her representative capacity, was "the nominal or legal owner" and Harding was the "beneficial or equitable owner." *Ohio Div. of Real Est. v. Vantell*, 128 Ohio App.3d 410, 416, 715 N.E.2d 217 (7th Dist.1998), quoting Black's Law Dictionary (5 Ed.1979) 996 ("There may therefore be two 'owners' in respect of the same property, one the nominal or legal owner, the other the beneficial or equitable owner."). The legal issue before us is whether Harding's equitable interest in the property qualified her as "the owner" under R.C. 4735.18(A)(17). We find that it does not.

**{¶ 34}** The term "owner" is not defined in the statute. *See* R.C. 4735.01 ("Definitions"). When a statutory term is undefined, we apply a "plain and ordinary meaning." (Quotations omitted.) *Great Lakes Bar Control, Inc. v. Testa*, 156 Ohio St.3d 199, 2018-Ohio-5207, 124 N.E.3d 803, ¶ 8. "Interpretation of an undefined statutory term—and whether something meets the definition of that term—is a matter of law, not a question of fact." *King v. Buildtech Ltd. Constr. Dev.,* 6th Dist. Lucas No. L-22-1088, 2023-Ohio-1092, ¶ 40. Again, our standard of review, as to "purely legal questions," is de novo.

**{¶ 35}** Black's Law Dictionary contains the following definitions:

**Owner:** Someone who has the right to possess, use, and convey something; a person in whom one or more interests are vested. An owner may have complete property in the thing or may have parted with some interests in it (as by granting an easement or making a lease).

**Legal owner:** One recognized by law as the owner of something; esp., one who holds legal title to property for the benefit of another.

**Equitable owner:** 1. One recognized in equity as the owner of something because use and title belong to that person, even though legal title may belong to someone else; esp., one for whom property is held in trust. — Also termed beneficial owner. * * *

17.

Black's Law Dictionary (11th ed.2019); *see also Vantell* at 416 quoting *Blue Ash Bldg. & Loan Co. v. Hahn*, 20 Ohio App.3d 21, 24, 484 N.E.2d 186 (1st Dist.1984) (Using similar definition of "owner" and quoting Black's Law Dictionary (5 Ed.1979) 996.

{¶ 36} Applying the definitions set forth above, Long (acting on behalf of Breck Properties) qualified as the **"owner"** because she had a vested right to "possess, use, and convey" the property. And, she retained that designation, even after she "parted with" *some* (i.e. her right to possess and use) *but not all (*i.e. her right to convey) her interest in the property. And because she maintained legal title to the property, Long also qualified as the "**legal owner**," and is "recognized by law as the owner of" the property. *Id.* But, Harding qualified as an "**equitable owner**" of the property because "use and title belong[ed] to [her], even though legal title * * * belong[ed] to [Long]." *Id.*

{¶ 37} Applying those definitions to R.C. 4735.18(A)(17) we find that although Harding's equitable ownership of the property made her "*an* owner" of some rights to the property—i.e., an equitable owner—she was not "*the* owner" under R.C. 4735.18(A)(17). That designation belonged to Long, acting on behalf of Breck Properties. And, because only "the owner" (or the owner's agent) could consent to the placement of a sign on the property, Harding, who was not the owner, violated Section (A)(17) in doing so.

{¶ 38} We find that OREC's conclusion—that Harding was not "the owner" of the property—was not "contrary to law." Therefore, the common pleas court did not err in affirming OREC's decision on this issue, and Harding's second assignment of error is not well-taken.

18.

## VI. OREC did not "create a new standard" for imposing liability under R.C. 4735.18(A)(17)

{¶ 39} Finally, in her fourth assignment of error, Harding claims that OREC—by excluding a "vendee" to a land contract from R.C. 4735.18(A)(17)'s definition of "owner"—has "establish[ed] a new standard for licensed real estate brokers, which did not exist before." Again, we disagree.

{¶ 40} OREC had jurisdiction over this case because Harding is a licensed real estate broker. R.C. 4735.18 authorizes OREC to impose discipline "upon any licensee who, whether or not acting in the licensee's capacity as a real estate broker or salesperson, *or in handling the licensee's own property*." (Emphasis added.) In this case, Harding was acting in her personal capacity. The type of financing she arranged was by way of a land contract, which is governed by an entirely different chapter of the Ohio Revised Code. *See* Chapter 5313 ("Land Installment Contracts").

{¶ 41} Harding claims that there is no legal authority to support the conclusion that "a vendee to a land contract has no legal right to list the property." But this case does not consider whether Harding had a *legal right* to list the property; the relevant issue in this case is whether Harding's real estate license may be suspended or revoked because she violated a statutory provision, unique to real-estate agents, that prohibits agents from listing a property "without the consent of the owner."

{¶ 42} OREC concluded, as a matter of law, that Harding, as vendee, did not qualify as "the owner," under R.C. 4735.18(A)(17), and, as we found in response to Harding's second assignment of error, the agency's decision is not "contrary to law."

R.C. 5313.01(D) defines a "[v]endee" as a "person who acquires an interest in property pursuant to a land installment contract, or any legal successor in interest to that person." This is consistent with Harding having been found to have an "equitable interest" in the property. That is, while she had "an interest" in the property, it was inferior to the rights of "the owner."

{¶ 43} Simply put, there is no authority to support the position that a "vendee" must be considered "the owner" for purposes of R.C. 4735.18(A)(17) in all circumstances. We specifically reject the argument that OREC's adjudication order "created a new standard" for licensed real estate brokers, and therefore find Harding's fourth assignment of error not well-taken.

## VII.  Conclusion

{¶ 44} Under the circumstances of this case, we cannot conclude that the lower court abused its discretion in finding that OREC's adjudication order was supported by reliable, probative and substantial evidence that Harding offered property for sale, without the consent of the owner. We also find the trial court's conclusion, that by her actions Harding violated R.C. 4735.18(A)(17), was not contrary to law. Accordingly, we affirm the judgment of the Lucas Count Court of Common Pleas and find Harding's assignments of error not well-taken.

{¶ 45} Pursuant to App.R. 24, Harding is ordered to pay the costs of this appeal.

Judgment affirmed.

20.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.

Christine E. Mayle, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.